OPINION OF THE COURT
Titone, J.
In People v Dokes (79 NY2d 656), this Court held that a defendant has a right to be present during the Sandoval hearing preceding the trial[1] except when such presence would be "superfluous” (see, 79 NY2d, at 662). We also held that a violation of this right ordinarily requires reversal even in the absence of a timely objection (id.). Our prior holdings, however, leave open at least one important question. Although we have decided several other cases under the Dokes rule (People v Cruz, 81 NY2d 738; People v Gebrosky, 80 NY2d 995; People *259 v Beasley, 80 NY2d 981; People v Rose, 80 NY2d 802; People v Alexander, 80 NY2d 801), we have not previously been asked to consider the degree to which that rule should be applied retroactively and, thus, the retroactivity question remains unsettled (see, People v Callahan, 80 NY2d 273, 284, n). These cases, both of which were tried before this Court handed down its decision in Dokes and both of which have been submitted with briefs raising retroactivity as an issue, present us with an opportunity to resolve that important question.
I.

People v Favor

Prior to defendant Favor’s trial, the court held an in camera conference to determine which prior convictions and bad acts the prosecutor would be permitted to raise on cross-examination if defendant elected to testify. Defendant was not present during this proceeding, although he was present in the courtroom when the trial court subsequently described the gist of the in camera discussion and set forth its Sandoval decision.
Following the trial, the jury returned a guilty verdict on the first two counts of the indictment. Defendant then pleaded guilty to the remaining counts with the understanding that the sentences imposed for these counts would run concurrently to the sentences to be imposed for the first two counts. On November 3, 1990, defendant was sentenced in accordance with this understanding.
On appeal from the judgment of conviction, defendant Favor argued that reversal was required because he had been deprived of his right to be present during a material stage of the trial. In a decision that was handed down some 13 Vi months before Dokes was decided, the Appellate Division declined to entertain defendant’s argument, noting that the argument had not been "preserve[d]” by timely objection (172 AD2d 1052). After the decision in Dokes was announced, defendant was granted leave to appeal by a Judge of this Court.

People v Smith

Defendant was charged with participating in a robbery that resulted in the killing of a bartender. During a pretrial colloquy conducted on December 10, 1990 in open court and in defendant’s presence, the prosecutor asked the court whether it wished to "address the [Sandoval] issues on the record.” *260 When the court responded affirmatively, the prosecutor indicated that there were 14 prior incidents in issue and alluded to a prior "ruling” precluding the People from using all 14 for cross-examination. At that point, the transcript minutes indicate that "a brief discussion was held off the record between the court and counsel.”
When the recorded part of the proceeding resumed, in defendant’s presence, the prosecutor announced that the court "has advised that [the People] would not be allowed to use the combined 14 matters but would [be] limit[ed]” to the use of four specific prior incidents occurring in 1987, 1988 and 1989. The court then invited defense counsel to comment, and counsel responded by arguing that the People should be precluded from using one of the identified four because he had not received timely notice of the People’s intention to use it. Use of the other three, defense counsel argued, should be forbidden to the extent that they involved larcenies, since "unlawful taking” was also one of the elements before the jury in the upcoming trial for robbery. After hearing further argument from the prosecutor, the trial court ruled in the People’s favor with respect to all four of the remaining incidents.
Defendant was ultimately tried and convicted of several of the charged crimes. On his appeal from the judgment of conviction, the Appellate Division held that defendant’s exclusion from the bench conference at which the Sandoval issues were discussed did not require reversal because the outcome of that conference — the preclusion of 10 of the 14 prior incidents —was not prejudicial to defendant and, with respect to the remaining four, a full de nova hearing had been held in defendant Smith’s presence. This appeal, taken by permission of a Judge of this Court, ensued.
II.
Traditional common-law methodology contemplates that cases on direct appeal will generally be decided in accordance with the law as it exists at the time the appellate decision is made (see, Vandenbark v Owens-Ill. Co., 311 US 538; United States v Schooner Peggy, 1 Cranch [5 US] 103, 110; Gurnee v Aetna Life & Cas. Co., 55 NY2d 184; Gager v White, 53 NY2d 475, cert denied sub nom. Guertin Co. v Cachat, 454 US 1086; People v Pepper, 53 NY2d 213, 219; see also, Griffith v Kentucky, 479 US 314). This principle follows quite naturally from *261 the bedrock assumptions that "our government is one of laws, and not of men” and that, consequently, judicial decisions reveal or elucidate, rather than create, the law (see generally, Linkletter v Walker, 381 US 618, 622-623; People v Pepper, supra, at 220; see also, Desist v United States, 394 US 244, 258-259 [Harlan, J., dissenting]). Taken to their logical conclusion, these assumptions lead to the tenet that recently announced rules of law, including those that overrule prior decisions, are "not 'new law but an application of what is, and theretofore had been, the true law’ ” (Linkletter v Walker, supra, at 623, quoting Shulman, Retroactive Legislation, 13 Encyclopaedia of Social Sciences, at 355, 356 [1934]). Accordingly, under this view, retroactive application of current rules is always required, since it would be unthinkable to apply anything less than the "true” law to an actual controversy.
In contrast to this view, some courts and scholars have recognized that "judges do in fact do something more than discover law” (Linkletter v Walker, supra, at 623) and that unwavering insistence on retroactivity is "out of tune with actuality largely because judicial repeal ofttime d[ces] 'work hardship to those who [had] trusted to its existence’ ” (id., at 624, quoting Cardozo, Address to the NY Bar Assn, 55 Rep NY St Bar Assn 263, 296-297). Recognizing the pragmatic wisdom of these observations, the courts have been willing to temper what would otherwise be "an absolute rule of retroaction” and, "in appropriate cases,” to limit their new rules of law to prospective application (Linkletter v Walker, supra, at 628-629; see, e.g., James v United States, 366 US 213; Great N. Ry. v Sunburst Co., 287 US 358, 364; People v Mitchell, 80 NY2d 519).
While the Supreme Court has steered away from the Link-letter position, at least for criminal appeals that have not yet become final (Griffith v Kentucky, 479 US 314, supra; cf, Teague v Lane, 489 US 288; see also, Graham v Collins, 506 US —, 113 S Ct 892, 122 L Ed 2d 260),[2] we have recently reaffirmed the principle of prospective application of deci *262 sional law by holding that a new rule of State law need not automatically be applied to all cases currently in the direct appellate pipeline (People v Mitchell, supra, at 526-528; see, American Trucking Assns. v Smith, 496 US 167, 177 ["state courts generally have the authority to determine the retroactivity of their own decisions”]). Accordingly, when confronted with a direct appeal that implicates a newly announced State rule of law, an appellate court must consider the threshold question of retroactivity, weighing three basic factors — "(1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect on the administration of justice of retroactive application” (People v Mitchell, supra, at 528). Application of these factors, which are derived from this Court’s earlier decision in People v Pepper (supra, at 220; see also, People v Morales, 37 NY2d 262, 268-269), will determine whether a new rule should be given retroactive effect.
III.
Turning to the dispute before us, we initially reject both defendants’ contentions that the Dokes rule rests on Federal constitutional due-process principles and that, consequently, the Mitchell-Pepper retroactivity test is inapplicable here. Although the Dokes opinion makes reference to the Federal due-process standard (79 NY2d, at 659, 662, quoting Snyder v Massachusetts, 291 US 97, 106-107), it ultimately characterized the question before it as one "concerning] the right conferred by CPL 260.20” (79 NY2d, at 662). Moreover, any question as to Dokes’ doctrinal underpinnings has been answered by our subsequent decision in People v Morales (80 NY2d 450, 456), in which we cited Dokes as an example of "our decisions [that] give greater protection than appears to be constitutionally required [under Federal due-process rules]”. Thus, as is the case with the right recognized in People v Antommarchi (80 NY2d 247; see, People v Mitchell, supra, at 526-527), the right to be present that we recognized in Dokes is derived from the State statutory right to be present at "material” stages of the proceeding (CPL 260.20; see generally, People v Mullen, 44 NY2d 1). Accordingly, we are free to apply our own State three-factor analysis in determining whether the Dokes rule should be given retrospective effect (People v Mitchell, supra, at 526-527).
IV.
The threshold question under that analysis is whether *263 Dokes is really a "new” rule of law at all. Of course, a judicial holding overruling established precedent should, in most instances, be considered a "new” rule requiring analysis under the Pepper-Mitchell factors (see, Graham v Collins, 506 US, at —, 113 S Ct, at 897-898, 122 L Ed 2d, at 269-270, supra; Chevron Oil Co. v Huson, 404 US 97, 106-107, cited with approval in Gurnee v Aetna Life & Cas. Co., 55 NY2d 184, 192, supra). Similarly, a "new” rule may be created when "there has been such a sharp break in the continuity of law that its impact will 'wreak more havoc in society than society’s interest in stability will tolerate’ ” (Gager v White, supra, at 483, quoting Fairchild, Limitation of New Judge-Made Law to Prospective Effect Only: "Prospective Overruling” or "Sunbursting”, 51 Marq L Rev 254). Finally, a departure from the general rule of retroactive application may be warranted where a court’s recent holding "represented a dramatic shift away from customary and established procedure” (People v Mitchell, supra, at 525).
On the other hand, "[a] judicial decision construing the words of a statute [for the first time] does not constitute the creation of a new legal principle” (Gurnee v Aetna Life & Cas. Co., supra, at 192). Further, retroactivity should not be in question when a court’s ruling merely applies previously established principles in a new factual setting or settles a question in a manner that was clearly foreshadowed (see, Gurnee v Aetna Life & Cas. Co., 55 NY2d 184, 192, supra; see also, Yates v Aiken, 484 US 211; cf., Gager v White, supra; see also, Chevron Oil Co. v Huson, supra, at 106). Whatever criteria are used to define the concept of a "new” rule of law, care must be taken to assure that it remains a relatively narrow one, lest the exception swallow up what has always been considered the normal rule in legal methodology — i.e., that cases should be decided on the basis of the law as it exists at the time of decision.[3]
*264 When these principles are applied in this context, substantial questions may be raised as to whether Dokes, the judicial holding in issue, is really a "new” rule at all. Before Dokes, this Court had, on many recent occasions, explained and elaborated upon the right to be present that is conferred by CPL 260.20. We had held that the right includes the prerogative to be present at a hearing to elicit testimony from a witness about the accused’s alleged intimidating conduct (People v Turaine, 78 NY2d 871), at a rereading of a portion of the court’s charge to the jury (People v Cain, 76 NY2d 119), at pretrial hearings where factual questions are to be determined (People v Anderson, 16 NY2d 282) and at any proceeding in which the defendant’s presence is substantially and meaningfully related to the ability to defend (People v Ciaccio, 47 NY2d 431, 436; People v Mullen, 44 NY2d 1, 4-5, supra). Additionally, our pre-Dokes cases were consistent in identifying the defendant’s personal knowledge of relevant factual matters as among the most important factors in determining whether the right to be present is applicable to a particular proceeding (see, People v Turaine, supra, at 872; People v Anderson, supra, at 288). In contrast, the cases in which we held the right to be present inapplicable uniformly involved proceedings in which only questions of law, procedure or ministerial matters were discussed (e.g., People v Velasco, 77 NY2d 469; People v Rodriguez, 76 NY2d 918; see also, People v Ferguson, 67 NY2d 383).
Given this background, it cannot be said that Dokes broke any new legal ground (see, Teague v Lane, supra, at 301 [O’Connor, J.]). We relied heavily in Dokes on prior case law, which, we observed, established the defendant’s "peculiar knowledge” of relevant factual matters as "a key factor” in determining whether the defendant has a right to be present (79 NY2d, at 659-660). We then reasoned that if this factor were found to be present in the Sandoval context, it would follow that "as in Anderson (supra) and Turaine (supra), * * * the defendant has a right to be present” (79 NY2d, at 660). Having set forth this syllogism, we considered the precise nature of the Sandoval proceeding, making special note of the defendant’s unique knowledge of the facts surrounding his or her prior criminal record and "the significance of the court’s [Sandoval] determination” with respect to the defendant’s ultimate decision whether to testify (79 NY2d, at 661-662). Based on these considerations, we concluded that "the potential for meaningful participation by the defendant” in this *265 context "is apparent” and that, accordingly, a defendant has a right to be present during the substantive portion of the Sandoval hearing (id., at 660-661). Dokes may thus be viewed as merely another point in a continuum of cases explaining and applying the statutory right to be present at "material” stages of the proceeding.
V.
We need not definitively resolve the question whether Dokes represents a "new” rule of law, as the dissent contends, or is instead a mere application of existing principles to a new set of facts. In either event, retroactive application of the rule is required because the Pepper analysis leads inevitably to that conclusion. The first prong of the Pepper test, which looks to the purpose of the new rule and its relationship to the fact-finding process, cuts in favor of retrospectivity. The purpose of Dokes — to enable the defendant to contribute his or her "peculiar knowledge” of the relevant facts — is directly related to enhancing the accuracy of the Sandoval determination. Further, the pretrial Sandoval proceeding implicates the fact-finding process at trial, in that the trial court’s Sandoval ruling "is often the pivotal factor in the defendant’s determination whether to testify” (People v Dokes, supra, at 662) and a sound Sandoval ruling can weed out impeachment evidence of low probative worth (see, People v Sandoval, 34 NY2d 371, 376-378, supra).
The second Pepper factor, the degree of prior reliance on pr e-Dokes law, also supports retroactivity here. Contrary to the People’s contentions, there was no firmly established body of case law approving the defendant’s exclusion from Sandoval hearings. As the People acknowledge, in the Fourth Department, where defendants Favor and Smith were tried, there were no pre-1991 reported Appellate Division decisions sanctioning such a procedure. A similar situation existed in the First Department, which first addressed the issue in December of 1990 (People v Lee, 168 AD2d 267) and then, in the three successive cases raising the issue, reached inconclusive results (compare, People v Rose, 175 AD2d 32, affd 80 NY2d 802; with People v Jordan, 174 AD2d 490; and People v Cruz, 179 AD2d 529, revd 81 NY2d 738, supra). The Second Department also demonstrated some uncertainty about the correct resolution of the issue (compare, People v Scott, 163 AD2d 341; and People v Jenkins, 157 AD2d 854; with People v *266 Peterson, 151 AD2d 512; People v Dokes, 173 AD2d 724, revd 79 NY2d 656, supra; People v Floyd, 179 AD2d 770; People v Ray, 184 AD2d 596; People v Gebrosky, 181 AD2d 692, revd 80 NY2d 995, supra). In fact, the only real consistency on the issue came from the Fourth Department, which held, in a series of 1991 decisions, that the defendant’s exclusion from Sandoval hearings did not require reversal in the absence of preservation or a showing of prejudice (People v Wynn, 175 AD2d 659; People v Lomack, 174 AD2d 1037; People v Alexander, 174 AD2d 996, revd 80 NY2d 801; People v Cole, 174 AD2d 970; People v Favor, 172 AD2d 1052, supra [revd herein]; People v Dunbar, 172 AD2d 1006). And, even these Fourth Department decisions, which rested primarily on preservation grounds, could hardly be regarded as ringing endorsements of the practice of excluding the accused from Sandoval hearings.
Moreover, even if it could be argued that the Appellate Divisions had been developing a consistent body of case law on the subject, reliance on such a short-term phenomenon cannot be justified, particularly in view of the fact that of the 14 cases which the People now cite, five (including this one) were reversed when they reached this Court of Appeals. Such reliance would have been especially unwarranted, since the decisions handed down by this Court during the same period of time left little room for doubt about the need to include the defendant in any proceeding in which his or her participation would potentially be meaningful (see, III., supra).
Finally, the third Pepper factor, the effect of the new rule on the administration of justice, does not furnish a sound basis for withholding application of Dokes to all cases currently pending on direct appeal. Contrary to the People’s assertion, there is simply no indication in the parties’ submissions that retroactive application of Dokes could lead to wholesale reversals. Unlike in People v Mitchell, where the disapproved practice was virtually universal (see, 80 NY2d, at 529, supra), the People have failed to demonstrate that the practice of excluding defendants from Sandoval hearings was widespread throughout the State before it was rejected in Dokes. Moreover, unlike in Mitchell, there are no special factors here, such as the need to hold reconstruction hearings (see, 80 NY2d, at 529, supra) that would have a serious deleterious effect on the administration of justice in this State.
In sum, there is no convincing reason in this instance to depart from the general principle that cases on direct appeal *267 are to be decided under the law at the time of the decision. Accordingly, our holding in Dokes is fully applicable to the two appeals before us and the only remaining question is whether that holding requires reversal under the facts and circumstances presented by each case.
VI.

People v Favor

As the record of his trial makes clear, defendant Favor was not present at the Sandoval hearing when the use of his prior criminal acts was discussed. This exclusion was a clear violation of the Dokes holding. The fact that the trial court recited the gist of its Sandoval decision in defendant’s presence does not ameliorate the error, since this recitation did not furnish defendant with the opportunity for meaningful participation to which he was entitled (see, People v Alexander, supra). Moreover, contrary to the dissent’s contention, there is no basis for holding defendant’s presence to have been "superfluous” in this context, since the outcome of the proceeding from which he was excluded was not wholly favorable and the surrounding circumstances do not negate the possibility that defendant might have made a meaningful contribution to the colloquy (cf., People v Smith [decided herewith]). We note that, notwithstanding the dissent’s vigorous arguments to the contrary, this conclusion is no more "speculative” here than it was in our unanimously decided rulings in People v Dokes (supra), People v Cruz (supra), People v Gebrosky (supra), People v Beasley (80 NY2d 981, supra), People v Rose (supra) and People v Alexander (80 NY2d 801, supra). Thus, reversal of defendant Favor’s conviction is required, even in the absence of a timely objection (see, People v Dokes, supra, at 662).
Our holding in this case represents a rejection of the People’s effort to inject a case-specific "prejudice” test into the Dokes inquiry. The suggestion that we should inquire into individualized prejudice is inconsistent with our rationale in Dokes, which stressed that prejudice is inherent when a defendant is deprived of the opportunity for meaningful participation at a "material” stage of trial (see, id., at 661-662). Likewise, we decline to adopt the People’s further contention that the remedy in cases involving Dokes error should be a remittal for a new Sandoval hearing rather than an outright reversal of the judgment of conviction. Such a proceeding, *268 conducted in hindsight and on artificial terms, is not an adequate substitute for the authentic, give-and-take discussion that occurs when the Sandoval question is fresh.

People v Smith

The facts in defendant Smith’s case necessitate a different result. The only portion of the proceeding from which this defendant was even arguably excluded was a preparatory bench conference at which the prior criminal acts the People wished to use for cross-examination were identified and, insofar as may be discerned from the record, the court made a preliminary determination excluding 10 of the 14 identified acts. Defendant was indisputably present for the remainder of the proceeding, in which the parties argued about the admissibility of the remaining four criminal acts and the court made its de nova determination about those acts.
In view of the wholly favorable outcome of the portion of the Sandoval proceeding from which defendant was excluded, it cannot reasonably be said that there was any potential for additional meaningful input by defendant. Thus, this is one of those exceptional situations in which the accused’s presence would have been wholly "superfluous” (see, People v Dokes, supra, at 662).
Although we hold that Dokes does not require reversal in defendant Smith’s case, we note that the better practice would be to have the accused present during every colloquy relating to the Sandoval question, since the outcome of such colloquies can rarely be predicted in advance. In view of the significant potential for meaningful participation by the defendant, there would seem to be little sound reason, short of an affirmative waiver, for excluding the defendant from any aspect, informal or formal, of the Sandoval proceeding.
We have considered defendant’s remaining contentions concerning the effectiveness of his attorney’s representation and find those contentions to be without merit.
Accordingly, in People v Favor, the order of the Appellate Division should be reversed and a new trial ordered; in People v Smith, the order of the Appellate Division should be affirmed.

. See, People v Sandoval (34 NY2d 371).

. Because of the important "underlying considerations of finality,” the Supreme Court has not been as generous in applying new rules of constitutional law to collateral proceedings such as those seeking habeas corpus relief (Teague v Lane, supra, at 305-316 [O’Connor, J.]; see, Graham v Collins, supra). Similarly, for purposes of retroactivity analysis, our Court has drawn a sharp distinction between cases on direct appeal and cases in which "[t]he normal appellate process [has come] to an end” (see, People v Pepper, supra, at 222).

. For example, the Supreme Court has indicated that a legal rule will be considered "new” if it "was not 'dictated by precedent’ ” (Graham v Collins, 506 US, at —, 113 S Ct, at 897, 122 L Ed 2d, at 269, supra, quoting Teague v Lane, supra, at 301 [O’Connor, J.] [emphasis in original]). Manifestly, this standard, which was devised to address the applicability of recent judicial decisions to collateral habeas corpus proceedings, would dramatically expand the class of cases in which retroactivity is in issue, since few decisions made by an appellate court such as ours are truly "dictated” or compelled by precedent.