(April 26, 1994)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAFAEL ROBLES, Appellant. [614 NYS2d 1] —Judgment of the Supreme Court, Bronx County (Bonnie Wittner, J.), rendered April 15, 1991, convicting defendant, after jury trial, of criminal sale of a controlled substance in the third degree and sentencing him to a term of 4½ to 9 years, unanimously reversed, on the law, and the matter remanded for a new trial.

The defendant has moved for reargument of his appeal decided by order of this Court entered April 22, 1993 (192 AD2d 425); we affirmed the above-described judgment convict-

ing defendant of criminal sale of a controlled substance in the third degree and sentencing him to a term of 4½ to 9 years.

On his appeal, the defendant had argued that he was entitled to a reversal of his conviction and a new trial by reason of the trial court's failure to provide him with an interpreter at his *Sandoval* hearing, such failure being tantamount to a denial of the defendant's fundamental right to be present and participate at all material stages of the proceedings against him.[1] Although it is clear that a *Sandoval* hearing is a material stage of the prosecution *(People v Dokes,* 79 NY2d 656, 662) and that a defendant's claim of improper exclusion therefrom is reviewable on appeal, as a matter of law, notwithstanding the absence of any contemporaneous objection to the trial court's exclusionary procedure *(supra),* we held, in disposing of the defendant's appeal, that the issue was not preserved. We reached that conclusion not because any action by the defendant was necessary to preserve the fundamental right to be present, for as noted it is clear that none is, but because the defendant did not register any objection to the court's failure to supply him with an interpreter. In support of the proposition that a claim of constructive exclusion, such as the defendant made, had to be preserved by "timely objection" (192 AD2d, *supra,* at 425), we cited to *People v Ramos* (26 NY2d 272, *supra).* A careful reading of *Ramos,* however, discloses that the case does not require a "timely objection" in order to preserve so basic a due process issue for appellate review. All that *Ramos* may be read to signify is that the due process right of a non-English speaking defendant to an interpreter may be waived "where a defendant, or his attorney, fails to call to the attention of the trial court, in some appropriate manner, the fact that he does not possess sufficient understanding of the English language [citation omitted]" *(supra,* at 274). The only relevant question, then, which might have been posed in reliance upon *Ramos* was not whether the defendant registered a "timely objection," but whether the defendant or his attorney brought it to the attention of the trial court "in some appropriate manner" that the defendant did not possess sufficient understanding of the English language. And, there is no question that the present defendant did so. Indeed, the word "interpreter" is

---

1. The right to an interpreter, where one is needed, as a component of due process, is not in doubt: "a defendant who cannot understand English is entitled to have the trial testimony interpreted to him in a language which he understands in order that he may meaningfully assist in his own defense" *(People v Ramos,* 26 NY2d 272, 274).

written on defense counsel's notice of appearance; the words "interpreter required" are stamped on the backing of the felony complaint; and the word "Spanish" appears at the top of the Supreme Court file. Nor, if it were relevant, is there any question that the court understood full well from these prominent notations that an interpreter would be required, for the record consistently shows that an interpreter was in fact present at every material stage in the proceedings, except, of course, the *Sandoval* hearing. Plainly, the failure to provide an interpreter for the *Sandoval* hearing had nothing to do with any failure by the defendant to notify the court "in some appropriate manner" that one was needed, for such notice had been given and was otherwise heeded; it is rather attributable either to oversight or to what, at the time of the defendant's trial, was the all too prevalent misperception that a defendant's right to be present at trial did not encompass presence at *Sandoval* hearings. In any case, there was no waiver within the meaning of *Ramos;* once the court had been appropriately advised of the defendant's need of an interpreter it was incumbent upon the court to assure that one was provided at all ensuing material stages of the proceeding. It should be stressed that it is the court's basic obligation to assure that the defendant's fundamental right to be present and participate meaningfully in his defense is not compromised. That obligation is not diminished by the defendant's omission constantly to remind the court of it, and a failure in its discharge is accordingly reviewable on appeal, as a matter of law, notwithstanding the absence of any objection thereto at trial *(see, People v Dokes, supra,* at 662; *People v Antommarchi,* 80 NY2d 247, 250; *People v Mehmedi,* 69 NY2d 759, 760; *People v Ahmed,* 66 NY2d 307, 310); nor is there any reason to suppose, once the court has been placed on notice "in some appropriate manner" that a defendant's right to be present and participate entails the provision of an interpreter, that there should any greater need for "timely objection" as a condition of addressing an appellate claim of constructive exclusion as a matter of law. Only where there has been an unmistakeable waiver of the right to be present and with it a waiver of all that the trial court has been placed on notice that that right entails in a particular case, should a defendant's claim of exclusion, actual or constructive, from a material stage of the proceedings against him elude appellate scrutiny on grounds of non-preservation.

It follows that, contrary to the view expressed in our dispositional memorandum, the defendant's appellate claim of im-

proper exclusion from a material stage of the proceedings ought to have been addressed by this Court as a matter of law. And, had the merits been reached, as they should have, it is clear that, the dicta in our memorandum notwithstanding, there exists no ground upon which the defendant's exclusion might be held to have been permissible.

It is true, of course, that when a defendant's presence is superfluous to his or her ability to defend, it is not required as a condition of due process *(People v Dokes, supra,* at 662). But, if it was not entirely clear at the time of our decision, it is now that it is virtually impossible to make a finding that a defendant's presence was in fact superfluous except when the proceeding from which the defendant was excluded had an outcome entirely favorable to him. Indeed, addressing a set of circumstances materially indistinguishable from those presently at bar, where only the fact and not the underlying circumstances of the defendant's prior conviction was permitted for use in his cross-examination, the Court of Appeals stated, "contrary to the dissent's contention, there is no basis for holding defendant's presence to have been 'superfluous' in this context, since the outcome of the proceeding from which he was excluded was not wholly favorable and the surrounding circumstances do not negate the possibility that defendant might have made a meaningful contribution to the colloquy" *(People v Favor,* 82 NY2d 254, 267). Our suggestion that the present defendant's constructive absence from his *Sandoval* hearing might be held not to impair the subsequently obtained conviction because the trial court did not permit inquiry as to the underlying circumstances of defendant's prior convictions, was thus in error; the *Sandoval* ruling, permitting as it did inquiry as to whether the defendant had been convicted of a felony, was not "wholly favorable" to the defendant.

Since the Court of Appeals' decision in *Favor (supra),* the exceedingly narrow dimension of the superfluousness exception has been further underscored. Indeed, it was in the course of modifying our determination in *People v Odiat* (191 AD2d 183, *mod* 82 NY2d 872)—the very precedent upon which we relied in expressing the view that the within defendant's presence at his *Sandoval* hearing would have been superfluous —that the Court of Appeals noted pointedly, "We disagree with the Appellate Division that the superfluous presence exception set forth in *Dokes* is applicable here. Neither the prosecutor nor the defense attorney was fully able to apprise the *Sandoval* court of the underlying acts of defendant's prior

convictions, *and the outcome of the Sandoval hearing was 'not wholly favorable' to defendant"* *(supra,* at 874 [emphasis added]). And again, in *People v Michalek* (82 NY2d 906, 907), the Court of Appeals, in remanding the case for a proper determination of the defendant's claim of exclusion from the *Sandoval* proceeding stated, "Since it cannot be ascertained from the record whether defendant was present for either stage of the *Sandoval* hearing, *and because the outcomes of both stages were 'not wholly favorable' to defendant (People v Favor,* 82 NY2d 254, 267), the case must be remitted to Supreme Court for a reconstruction hearing to determine whether defendant was present during both stages of the hearing *(People v Odiat,* 82 NY2d 872)" (emphasis added).

But even if there were after *Dokes, Favor, Odiat,* and *Michalek,* some residual legal ground, however miniscule, for an argument to the effect that the superfluousness exception might in some case still be invoked notwithstanding a *Sandoval* outcome in some respect unfavorable to a defendant, there is no reason to suppose that this is such a case. It simply cannot be said that the defendant would have been unable to make any meaningful contribution to the colloquy concerning his prior conviction for weapons possession, or, to put it somewhat differently, that his presence would have been "useless, or the benefit but a shadow" *(Snyder v Massachusetts,* 291 US 97, 106-107). Even if, as appears to have been the case, the conviction was validly obtained, the defendant's knowledge of the underlying circumstances may still have been relevant to the ultimate *Sandoval* issue, i.e., whether the prior crime was sufficiently probative of the defendant's capacity for truthtelling to be permitted for use in his cross-examination.[2] As the Court of Appeals has now repeatedly stressed, the question, in determining whether a defendant's presence and participation at his or her *Sandoval* hearing would have been superfluous, is not whether the defendant's participation would likely have altered the outcome of either the hearing or the trial, but whether there was any possibility that the defendant might have made some meaningful contribution to the defense had he or she not been excluded from the proceedings. As was noted in *Favor (supra,* at 267), "Our holding in

---

**2.** *Dokes,* of course, makes clear that this is an issue upon which the defendant may make a meaningful contribution at the *Sandoval* hearing (79 NY2d, *supra,* at 661). Contrary to the import of our dispositional memoranda in this case and *Odiat* (191 AD2d 183, *supra),* it is not exclusively with respect to the validity of the record of prior convictions and bad acts that a defendant's *Sandoval* participation may have relevance.

this case represents a rejection of the People's effort to inject a case-specific 'prejudice' test into the *Dokes* inquiry. The suggestion that we should inquire into individualized prejudice is inconsistent with our rationale in *Dokes,* which stressed that prejudice is inherent when a defendant is deprived of the opportunity for meaningful participation at a 'material' stage of the trial" *(see also, People v Odiat, supra,* at 874). What was done by this Court in *Odiat,* and in the present case in express reliance upon *Odiat,* was precisely to "inject a case-specific 'prejudice' test into the *Dokes* inquiry". It is plain that we erred in doing so, and having been afforded the opportunity to correct our error in the present case, we believe that the correction ought to be made.

As this is a case in which we initially overlooked or misapprehended matters both legal and factual, it presents a particularly appropriate occasion for reargument. Nor should this occasion be foregone upon the technicality that the motion comes more than 30 days after our decision and order affirming the defendant's conviction *(see,* Rules of App Div, 1st Dept [22 NYCRR] § 600.14 [a]; *but see,* CPL 470.50 [2] which does not stipulate any time frame within which reargument must be sought).[3] This is not a situation in which the defendant is attempting to extend the period of appellate consideration in order to take advantage of new law. Although, decisions subsequent to the appeal *(People v Favor, supra; People v Odiat, supra; People v Michalek, supra)* have driven home, practically with an anvil, the unaccommodating narrowness of the superfluousness exception upon which this Court would have relied, they do not state new legal principles but merely throw into sharper relief the preexisting state of the law as articulated in *Dokes (supra).* The defendant was entitled to have his appeal decided in accordance with the law. As it is now evident that it was not—that we misread both *Ramos* and *Dokes*—the motion for reargument should be granted, and upon reargument the prior decision and order of this Court should be recalled and vacated and the within decision and order reversing the defendant's conviction and remanding the matter for a new trial issued in its stead.

Reargument granted, and upon reargument, the decision and order of this Court entered on April 22, 1993 is recalled and vacated. Concur—Murphy, P. J., Sullivan, Carro and Kupferman, JJ.

---

3. The statute provides quite simply that "an appellate court, in the interest of justice and for good cause shown, may in its discretion * * * order a reargument or reconsideration of the appeal." (CPL 470.50 [1].)