87 N.Y.2d 1029 (1996)
666 N.E.2d 175
643 N.Y.S.2d 470
The People of the State of New York, Respondent,
v.
Jose Monclavo, Appellant.
Court of Appeals of the State of New York.
Argued January 4, 1996.
Decided April 2, 1996.
Andrew E. Abraham, New York City, and Daniel L. Greenberg for appellant.
Robert M. Morgenthau, District Attorney of New York County, New York City (Mark Dwyer of counsel), for respondent.
Chief Judge KAYE and Judges SIMONS, TITONE, SMITH and CIPARICK concur; Judges BELLACOSA and LEVINE dissent and vote to affirm in separate opinions.
*1030 MEMORANDUM.
The order of the Appellate Division should be modified and the case remitted to the Supreme Court, New York County, for further proceedings in accordance with the memorandum herein and, as so modified, affirmed.
Defendant was convicted, after a jury trial, of criminal possession of a controlled substance in the fifth degree and sentenced to three to six years in prison. Prior to jury selection, the court and the attorneys referred to "a preliminary informal Sandoval conference" held earlier in the day (People v Sandoval, 34 N.Y.2d 371). It is clear that the earlier conference was a Sandoval hearing at which the court determined what questions the prosecutor would be allowed to ask should the defendant take the stand. The following colloquy occurred:
"MR. O'ROURKE: Judge, I thought we agreed that she could delve into the questioning of Burglary in the First Degree and two misdemeanors, and 
"THE COURT: That's going to be my ruling."
The decision on what could be asked had been determined at an earlier hearing, after a discussion of defendant's one prior felony conviction and 30 prior misdemeanor convictions. Even if, as the dissent contends, the court "formally" announced its Sandoval decision at the later colloquy in defendant's presence, *1031 the facts surrounding defendant's extensive felony and misdemeanor history were not discussed at that time. To the contrary, the record of this subsequent conference indicates that the details surrounding defendant's prior arrests and convictions were discussed only at the earlier, preliminary Sandoval conference. Given "the potential for meaningful participation by the defendant" during this factual discussion, he had a right to be present at the earlier conference (People v Dokes, 79 N.Y.2d 656, 661).
The record does not reflect that defendant was present as required (People v Dokes, supra). Moreover, the discussion held just prior to the jury being selected was not a new Sandoval hearing since there was no opportunity for the defendant to meaningfully participate and no argument about what convictions or bad acts could be brought out by the prosecutor. A mere repetition or recitation in the defendant's presence of what has already been determined in his absence is insufficient compliance with the Sandoval rule (People v Favor, 82 N.Y.2d 254, 267). Reasonable persons may differ on the meaning of a record and, contrary to the view of the dissent, the entire colloquy regarding Sandoval simply does not lead to the conclusion that the defendant had a meaningful opportunity to participate in a Sandoval hearing.[*]
Accordingly, the case must be remitted for a hearing to determine whether or not defendant was present at that Sandoval proceeding (People v Michalek, 82 N.Y.2d 906). If defendant was not present, a new trial must be held, preceded by a Sandoval hearing at which defendant is present. If it is determined that defendant was present, the judgment of conviction should be amended to reflect that result (People v Michalek, 82 NY2d, at 907, supra).

APPENDIX
"MS. HART: It's a one count case, Judge, possession fifth degree.
"Judge, we also had a preliminary informal Sandoval conference earlier today.
"If the defendant were inclined to testify, here, the People would be asking as we stated at the bench, to get in the 1986 felony conviction for Burglary in *1032 the Second Degree. The defendant also has approximately thirty misdemeanors and it was unclear as to what the Court had determined that he could be asked regarding that misdemeanor history.
"I'd request to be able to interrogate him on at least ten of those misdemeanors, of those thirty misdemeanors.
"He also has had felony parole revoked two times according to his RAP sheet and I believe that would be fair questioning since that's a prior bad act. He's also resentenced to a misdemeanor case which he had failed to do community service on. He also has an extensive bench warrant history, and I believe those factors, especially the patrol [sic] revocations, twice, are indications again of this defendant's intent to put his own interest above those of society and they are also recent in time and I would request the Court to allow me to question him on those facts.
"THE COURT: Mr. O'Rourke?
"MR. O'ROURKE: Judge, I thought we agreed that she could delve into the questioning of Burglary in the First Degree and two misdemeanors, and 
"THE COURT: That's going to be my ruling.
"MR. O'ROURKE: Okay. That's fine.
"THE COURT: The people will be allowed to elicit, should the defendant take the stand, the date of the conviction for the burglary charge, as well as the fact that it was a burglary conviction.
"MS. HART: A felony conviction?
"THE COURT: What is the degree?
"MS. HART: Burglary in the Second Degree.
"THE COURT: All right, Burglary in the Second Degree.
"I will also allow the People to elicit the fact that the defendant was convicted of two two [sic] misdemeanors, the two most recent misdemeanors with *1033 the date of the conviction without going into the nature or charges of those underlying facts.
"MS. HART: And nothing on the parole revocation?
"THE COURT: No."
BELLACOSA, J. (dissenting).
Because I would affirm the order of the Appellate Division upholding the judgment of conviction after a jury trial, I respectfully dissent. I completely agree with Judge Levine's dissenting expression that defendant's Dokes right was not violated in this case, and that the whole of the trial court's actions comported with existing statutory and precedential prerequisites (see, CPL 260.20; People v Favor, 82 N.Y.2d 254; People v Dokes, 79 N.Y.2d 656). I dissent separately, however, to identify some additional theoretical and precedential divergence from the majority, as well as to provide some practical observations relating to future practice, so that the Bench and Bar may avoid the appellate imposition of the reconstruction remedy.
Defendant claims that he was excluded from "a preliminary informal Sandoval conference" held before trial. He asks the appellate courts to infer absence at that conference solely from the colloquy at the subsequent Sandoval hearing and determination  at which he and his lawyer were present and raised no complaint or claim about the earlier phase. On that basis, he seeks an automatic reversal of his conviction and a new trial. The majority accepts appellant's new and expanded theory to the extent of granting partial, conditional relief. It reverses and remits for a reconstruction hearing to determine whether he was present at the initial discussion, on the assumption that his absence at that phase constitutes a Dokes violation.
A fair reading of the complete transcript reasonably demonstrates that whatever discussions might have taken place preliminarily, the Trial Judge had not yet formally decided the Sandoval matter. The defendant and his lawyer were ultimately given a plenary opportunity at an effective time to contribute to the Sandoval proceeding and ruling. Remittal for reconstruction of what happened at the initial informal conference on this record is, therefore, legally superfluous.
Stare decisis dictates  and there is no longer room for disagreement  that when a trial court merely recites in defendant's presence the "gist of its [prior] Sandoval decision," the right to presence under CPL 260.20 has already been violated *1034 on a per se basis (People v Favor, 82 NY2d, at 267, supra). This Court's overriding concern in this area remains whether the Sandoval ruling was a foregone conclusion by the time defendant was present, rendering subsequent presence a vain gesture, or whether the trial court had only begun the process of formulating its consideration with an eventual full and fair opportunity for the defendant's personal participation.
The trial court did everything possible to provide what was essentially a first instance, formal consideration with everyone present, expressly so that the Dokes-Sandoval presence protocol could be satisfied. To nullify the trial court effort undertaken at a still meaningful stage in these proceedings to comply with this Court's rigorous mandates, albeit by statutory construction, does not accord the trial court or the totality of the record the regularity they deserve. This remittal, thus, complicates and adds to the procedural maze and compels the parties to reconstruct an essentially meaningless ingredient.
In my view, the majority fails to sufficiently factor in that (1) the record declares the initial colloquy to be a "preliminary informal Sandoval conference" (emphasis added); (2) the prosecutor argued that "the People would be asking" to question defendant about a prior burglary conviction and 10 out of 30 misdemeanor convictions, and added, "I would request the Court to allow me to question him on those facts" (emphasis added); and (3) the trial court used the future tense in telling defense counsel, "[T]hat's going to be my ruling." Only later, with defendant present and able to object and contribute, and after hearing counsel, did the court render its formal ruling: "THE COURT: The people will be allowed to elicit, should the defendant take the stand," the defendant's burglary conviction and two misdemeanor convictions.
I disagree with the majority's characterization that, at the final rung on the appellate review ladder, all this case stands for is that reasonable minds may disagree concerning the interpretation of such plain pretrial proceedings. Greater deference is owed to the distributive allocation of the ascending yet complementary roles in the judicial process in connection with the legal, precedential and practical consequences aplenty flowing from this newest Dokes-Odiat permutation (see, People v Odiat, 82 N.Y.2d 872).
Today's rationale and remittal, in my view, compound the procedural consequences flowing from precedents under which the Court has directed the reconstruction remedy to determine whether a defendant was present at an earlier phase of a Sandoval *1035 hearing (People v Michalek, 82 N.Y.2d 906; People v Odiat, 82 N.Y.2d 872, supra). The extension of what I had always thought, based on weighty utilitarian and jurisprudential factors, was a rarely desirable remedy of last resort  long-delayed reconstruction proceedings  is significant and problematic.
Moreover, in both Michalek and Odiat, the record was unclear as to the defendants' presence in circumstances where actual Sandoval rulings were previously rendered by the trial courts with respect to the prior acts subject to the People's inquiry should defendants choose to testify. Thus, after the hearing in Odiat, "[t]he court ultimately determined that the People would be permitted to inquire" about several prior crimes (People v Odiat, supra, at 873 [emphasis added]). Defendant's presence at the hearing may have been impossible to ascertain without a reconstruction hearing, but the ruling plainly demonstrated that what was key to the rationale was that a functionally dispositive proceeding, to which the right-to-presence attached, had transpired earlier. That is the critical difference of this case from Odiat and, thus, demonstrates the remedial expansion in this case of Odiat's precedential reach.
Likewise, in Michalek, two actual Sandoval hearings were held, one pretrial and one shortly before the defendant's scheduled testimony at the trial. After the first hearing, the court "determined that the People would be permitted to question defendant concerning a prior New York felony conviction" (People v Michalek, supra, at 907 [emphasis added]). After the second hearing, the court "determined that the People would also be permitted to inquire of defendant regarding two recent New Jersey convictions" (id., at 907 [emphasis added]). That the colloquies at issue were actual hearings and discrete determinations was beyond dispute; again, the only ambiguity was in ascertaining the presence of the defendant in that discrete context. These are not mere semantical or interpretive quibbles, but matters of substantive difference, precedential demarcation, and differentiating remedial consequences.
Here, the Trial Judge did not "determine" the matter at the "preliminary informal Sandoval conference." Rather, the record is unequivocal that the subsequent, formal consideration was the actual Sandoval proceeding and determination. Defendant and his lawyer were unquestionably present at the Sandoval hearing in this case and had a full opportunity for input and participation as part of the trial court's de novo consideration and its actual resolution. Because the hearing at which defendant was undeniably present produced not merely a recitation *1036 of the "gist" of a previous decision or a foregone conclusion, a reconstruction hearing as to defendant's presence on the earlier occasion is not required by existing precedents or principles, and is superfluous. Put differently, even if defendant's absence from the first informal conference is conceded, reversal and remittal are not necessary here.
This remittal and reconstruction directive additionally overlooks the clear directive of People v Kinchen (60 N.Y.2d 772). There, the claim on appeal was based on the defendant's right to counsel, which, like the Dokes claim at issue here, does not have to be preserved in the traditional manner. The Court nevertheless affirmed the conviction, reasoning that the lack of a preservation requirement did not "dispense with the need for a factual record sufficient to permit appellate review" (People v Kinchen, supra, at 774; see also, People v Charleston, 54 N.Y.2d 622, 623; People v De Mauro, 48 N.Y.2d 892, 893). Kinchen is still operative, apt and persuasive and ought to produce an a fortiori affirmance in yet another of these Sandoval pretrial collateral disputes about presence.
I emphasize that the Kinchen requirement is not some side or back door substitute for traditional preservation principles generally needed and customarily operative at the trial level, but which regrettably do not apply in these Sandoval presence cases (People v Favor, 82 N.Y.2d 254, supra; People v Dokes, 79 N.Y.2d 656, supra). Instead, Kinchen represents a straightforward, distinctive responsibility for litigants to provide appellate courts with a proper record on which to base their decisions. Importantly, it does not contemplate multiple opportunities and reconstructions. Kinchen's key contribution to procedural regularity is lost when appellate proceedings become functional interludes to allow convicted defendants to unravel and then remake records that should and could have been attended to in the first round at the trial court level. The inevitable consequence of this ruling will add inordinate and unnecessary delay to the final adjudication of this and many other criminal proceedings.
Finally, the fact that preliminary, off-the-record conferences automatically qualify as formal, binding, Sandoval proceedings and rulings with per se remedial consequences, necessitating defendant's presence absent a waiver, is yet another unfortunate development affecting this entire field of pretrial proceedings (see, People v Favor, 82 N.Y.2d 254, 272, supra [Bellacosa, J., dissenting]). Informal explorations, and even false starts, ought not cast arguably procedurally flawed preliminary steps *1037 into irretrievably set stone. The ruling today takes the Trial Judge, who tried to follow this Court's Dokes dictates, to task and forces the trial court to conduct a superfluous, retrospective exercise. Useful preliminary explorations with counsel should not carry such untoward consequences, for they then will correspondingly suffer the counterintuitive disincentive against being undertaken in the first place. This practical boomerang is beyond any realistic purpose of Dokes, Favor, Odiat, Michalek or CPL 260.20.
To ward off some of these problems in the future, Trial Judges who are still willing to risk discussing any aspect of a Sandoval nature informally and preliminarily with counsel should also make certain to place express disclaimers on the record, for example, (1) that no Sandoval decision will be rendered, and (2) that the defendant will be produced for a plenary, de novo Sandoval hearing and determination down the road. In the alternative, trial courts should demand explicit waivers at every step and twist of the pretrial and trial proceedings. By such measures, busy Trial Judges might thus insulate their efforts and actions against unnecessary repetition and untoward prolongation of criminal proceedings.
LEVINE, J. (dissenting).
I respectfully dissent.
The record in this case indicates that "a preliminary informal Sandoval conference" was held off the record prior to a formal on-the-record hearing at which Sandoval issues were determined. We are unable to discern from the record in this case whether defendant was present at the preliminary informal Sandoval conference. Defendant argues that his right to be present at the Sandoval hearing was violated by his alleged absence from the preliminary conference. The majority agrees, holding that defendant's right to be present was violated if indeed he was not personally present at the preliminary conference, and the majority has thus ordered a reconstruction hearing to determine whether or not defendant was present at the preliminary conference. The record does not support the majority's conclusion. Rather, the record shows that defendant was furnished with a full and fair opportunity to give meaningful input into the Sandoval process and determination at the actual Sandoval hearing. Thus, the alleged absence of defendant at the preliminary discussion, at which his lawyer was present, is irrelevant in this circumstance and we need not remit for a reconstruction hearing to determine whether defendant was present at the first informal conference.
*1038 As we have repeatedly held, a criminal defendant has the right to be personally present at Sandoval hearings (see, People v Favor, 82 N.Y.2d 254; People v Michalek, 82 N.Y.2d 906) because defendant's presence at those proceedings is substantially and materially related to the ability to defend. At a Sandoval hearing, the ability of the defendant to participate is manifest because the determination is based on facts surrounding the defendant's past bad acts about which defendant has unique knowledge (People v Dokes, 79 N.Y.2d 656, 660-662). Thus a court's recitation of the "gist" of a Sandoval decision made in defendant's absence will "not ameliorate the error, since [the] recitation [does] not furnish defendant with the opportunity for meaningful participation to which he was entitled" (People v Favor, supra, at 267). However, a defendant's absence from a Sandoval hearing does not deprive him or her of the opportunity to give meaningful input into a Sandoval determination when the court essentially and functionally conducts a de novo hearing on the same matter at which defendant is present and at which he and his lawyer have a full and fair opportunity to participate (see, People v Feliciano, 88 N.Y.2d 18, 27 [decided today]; People v Favor, supra, at 268).
The parts of the record relied upon by the majority could support the position that what happened here was "[a] mere repetition or recitation in the defendant's presence of what ha[d] already been determined in his absence" (majority mem, at 1031). However, when read in its entirety, the record in this case demonstrates that defendant was in fact afforded a full and fair opportunity to meaningfully participate in the Sandoval determination at the later proceeding:
"MS. HART [PROSECUTOR]: Judge, we also had a preliminary informal Sandoval earlier today.
"If the defendant were inclined to testify, here, the People would be asking as we stated at the bench, to get in the 1986 felony conviction for Burglary in the Second Degree. The defendant also has approximately thirty misdemeanors and it was unclear as to what the Court had determined that he could be asked regarding that misdemeanor history.
* * *
"He also has had felony parole revoked two times *1039 according to the RAP sheet and I believe that would be fair questioning since that's a prior bad act. He's also resentenced to a misdemeanor case which he had failed to do community service on. He also has an extensive bench warrant history, and I believe these factors, especially the patrol [sic] revocations, twice, are indications again of this defendant's intent to put his own interest above those of society and they are also recent in time and I would request the Court to allow me to question him on those facts.

"THE COURT: Mr. O'Rourke?

"MR. O'ROURKE [DEFENSE COUNSEL]: Judge, I thought we agreed that she could delve into the questioning of Burglary in the First Degree and two misdemeanors, and 
"THE COURT: That's going to be my ruling.
"[DEFENSE COUNSEL]: Okay. That's fine.
"THE COURT: The people will be allowed to elicit, should the defendant take the stand, the date of the conviction for the burglary charge, as well as the fact that it was a burglary conviction.
"[PROSECUTOR]: A felony conviction?
"THE COURT: What is the degree?
"[PROSECUTOR]: Burglary in the Second Degree.
"THE COURT: All right, Burglary in the Second Degree. I will also allow the People to elicit the fact that the defendant was convicted of two * * * misdemeanors, the two most recent misdemeanors with the date of the conviction without going into the nature or charges of those underlying facts.
"[PROSECUTOR]: And nothing on the parole revocation?

"THE COURT: No." (Emphasis supplied.)
This complete transcript makes clear that whatever preliminary discussions had taken place earlier, the court had not yet definitively considered or conclusively decided any of the Sandoval issues until the time of the formal hearing. Thus, the *1040 prosecutor requested that she be allowed ("the People would be asking * * *. I would request") to question defendant on a long history of prior felony and misdemeanor convictions, as well as other prior bad acts, and argued in support of her position. Defense counsel was then offered the opportunity to respond fully to the prosecutor's request. He did so urging a far more restricted scope of cross-examination, and the court agreed. Until the Judge made the Sandoval ruling itself later in the colloquy, defendant was free to "point out errors in the DCJS report, to controvert assertions by the prosecutor with respect to uncharged acts and to provide counsel with details about the underlying facts of both charged and uncharged acts" (People v Dokes, 79 N.Y.2d 656, 661, supra). In other words  unlike in People v Favor (supra), People v Odiat (82 N.Y.2d 872) and People v Michalek (82 N.Y.2d 906, supra) in which the Sandoval determinations were finally determined in the absence (or alleged absence) of the respective defendants  defendant here had the opportunity to fully participate in the Sandoval determination at the essentially de novo hearing held in his presence. Defendant's decision not to further participate did not demonstrate his lack of opportunity to do so.
The majority apparently does not disagree that the test is whether a defendant was present at a hearing in which he or she had the opportunity for meaningful input before the court made its final Sandoval ruling (see, People v Favor, supra; see also, People v Michalek, supra; People v Odiat, 82 N.Y.2d 872, supra). The majority claims that such an opportunity was not had here because "the facts surrounding defendant's extensive felony and misdemeanor history were not discussed at [the formal hearing when defendant was present]." (Majority mem, at 1031.) However, the record at the hearing when defendant was present reflects that his entire criminal history was reviewed, that is, his "1986 felony conviction for Burglary in the Second Degree [plus] approximately thirty misdemeanors [plus his] felony parole revo[cation] [plus] extensive bench warrant history". The record conclusively shows that, in defendant's presence, his attorney was invited to respond to that entire criminal history which the prosecution requested permission to use in cross-examination ("THE COURT: Mr. O'Rourke?").
As defendant was given a full and fair opportunity to participate in the formal, on-the-record Sandoval hearing, at which the actual Sandoval determinations were made by the Trial Judge, defendant was afforded everything to which he was entitled by the statutory grant of a right to be present. Accordingly, I would affirm the order of the Appellate Division.
Order modified by remitting to Supreme Court, New York County, for further proceedings in accordance with the memorandum herein and, as so modified, affirmed.
NOTES
[*] The entire discussion of the Sandoval issue is included in the Appendix.