OPINION OF THE COURT
Jeanette Rodriguez-Morick, J.
Defendant Luis Pelegrin, charged with violating Vehicle and Traffic Law § 1192 (1), (2) and (3), operating a motor vehicle while under the influence of alcohol or drugs, moves pursuant to Criminal Procedure Law § 170.30 (1) (f)[1] to dismiss the charges against him on the grounds that they are based on violations of the Equal Protection and Due Process Clauses of the United States Constitution and of similar provisions in the New York State Constitution. In deciding the instant motion, this court has considered defendant’s motion to dismiss, dated July 31, 2012 (defendant’s motion to dismiss), its attached exhibits (1-2), and its appended decision and order, People v Rodriguez (Sup Ct, Bronx County, Apr. 16, 2010, Sackett, J., docket No. 2011BX029446); the People’s affirmation in opposi *791 tion, dated October 18, 2012 (affirmation in opposition); and other records in the court file.[2]
Background
The People allege that the police stopped defendant for “repeatedly swerving in and out of his lane.” (Affirmation in opposition at 8.) An officer on the scene also observed defendant to have the telltale characteristics of intoxication: bloodshot eyes, slurred speech, unsteadiness on feet, and a strong odor of alcohol. Defendant was also heard to have said “I had five shots five hours ago.” (Defendant’s motion to dismiss, exhibit 1, IDTU Rep.; complaint at 1.)
Defendant was subsequently taken to the Intoxicated Driver Testing Unit (IDTU) at the 45th Precinct. There, an officer administered a chemical test analysis of defendant’s breath, which revealed that defendant had a .13% blood alcohol content (BAG). (Defendant’s motion to dismiss at 8; Chem. Test; complaint.) In addition, officers filled out an IDTU Technician Test Report. The officer who completed that report crossed out the physical coordination test (PCT) section and wrote “Did not offer” and “Language Barrier.” (IDTU Rep.)
These last allegations form the basis of defendant’s constitutional challenge since, according to defendant, English-speaking suspects receive the PCT as a matter of course but non-English-speaking suspects are routinely denied the test. The result is that two classes of suspects exist: (1) English speakers who are afforded “two opportunities to show that they are or are not intoxicated,” and (2) non-English speakers who are “limited” to the BAG test. (Defendant’s motion to dismiss at 8.)
I. Equal Protection Analysis
The Fourteenth Amendment of the United States Constitution prohibits states from “denyfing] to any person within its jurisdiction the equal protection of the laws.” (US Const, Amend XIV, § 1.) Likewise, the New York State Constitution provides that
“[n]o person shall be denied the equal protection of the laws of this state or any subdivision thereof. No *792 person shall, because of race, color, creed or religion, be subjected to any discrimination in his or her civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state.” (NY Const, art I, § 11.)
Thus, “[a]n agency of the State denies equal protection when it treats persons similarly situated differently under the law, and this difference may be created by the grant of a preference as well as by the imposition of a burden.” (Matter of Abrams v Bronstein, 33 NY2d 488, 492 [1974] [citation omitted].)
Generally, courts analyze equal protection claims by (1) determining the classification, if any, made by the state’s action, and then (2) applying the appropriate level of scrutiny to the law, policy, or rule creating that classification to (3) ensure that such law, policy, or rule (or classification) is adequately related to a justifiable government interest. (See generally Erwin Chemerinsky, Constitutional Law: Principles and Policies § 9.1.2 [3d ed 2006].)
A. The State’s Language-Based Classification
In order to establish that a state action discriminates against a suspect class, one “must allege that a government actor intentionally discriminated against them on the basis of race, national origin or gender.” (Hayden v County of Nassau, 180 F3d 42, 48 [2d Cir 1999].) Individuals asserting violations of their rights may establish such intentional discrimination in one of two ways: (1) by showing they are subject to a facially discriminatory law or policy, i.e., one that expressly classifies persons on the basis of race, national origin, or gender; or (2) by showing that a state actor applied an otherwise facially neutral law or policy in a discriminatory manner and intended to do so. (Id.) If neither of the above can be established, then no equal protection violation will be found.
When a race-based violation of equal protection is established, by either of the two methods discussed above, strict scrutiny applies. In addition, even when it cannot be shown that the state has intentionally discriminated against a suspect class, strict scrutiny will apply to a non-suspect classification if a fundamental right is at issue.[3] Absent either intentional discrimination against a suspect class or the implication of a fundamental right, rational basis review applies.
*793 Here, defendant does not argue that the New York Police Department (NYPD) has a facially discriminatory rule or policy concerning the PCT that was denied to defendant. Instead, defendant argues that the NYPD’s denial of the PCT impermissibly classified him on the basis of language, i.e., as a non-English speaker. As defendant concedes (see defendant’s motion to dismiss at 12), government actions that classify individuals on the basis of language do not receive heightened scrutiny because such classifications, although inextricably intertwined with ethnicity in the case of many, are not classifications that are identified as suspect classifications under the controlling case law. (Soberal-Perez v Heckler, 717 F2d 36, 41 [2d Cir 1983].)
B. Disparate Impact
Absent an overt suspect classification, defendant must show (1) that the NYPD’s implementation of the rule or policy concerning the PCT had a disparate impact on a class, here, non-English-speaking suspects; and (2) that the NYPD intended to discriminate against that class. (Arlington Heights v Metropolitan Housing Development Corp., 429 US 252, 264-265 [1977] [“(O)fficial action will not be held unconstitutional solely because it results in a racially disproportionate impact. . . . Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause” (citation omitted)].)
Under well-established case law, discriminatory impact claims cannot be substantiated simply by noting a potentially large population of affected individuals. Statistics or other evidence is needed to prove disparate impact for purposes of equal protection. As the Appellate Division, First Department, has stated:
“Although plaintiffs may make the necessary showing by means of statistical evidence, their burden is *794 not met by submission of a two-page summary asserting that such evidence can be produced if needed. Irrespective of the persuasiveness of the unproduced evidence, it was unavailable to Supreme Court in deciding the motion.” (Becker v City of New York, 249 AD2d 96, 98 [1998] [citations omitted].)
Defendant’s motion papers contain allegations that Spanish is “the most, if not the most, common non-English language spoken by residents of New York City.” (Defendant’s motion to dismiss at 12, citing People v Rodriguez, slip op at 5 n 1.) Aside from this assertion, however, defendant fails to proffer any competent evidence regarding the number of non-English speakers affected by this rule, policy or procedure.
Even assuming defendant had provided the court with competent evidence from which disparate impact could be inferred, “[standing alone, [such impact] does not trigger the rule that racial classifications are to be subjected to the strictest scrutiny . . . justifiable only by the weightiest of considerations.” (Washington v Davis, 426 US 229, 242 [1976] [citation omitted].) As already noted (see supra at 792-793), a showing of intent is also required. Unfortunately, other than the conclusory assertion that “the Police Department treated defendant the way that they did because he looked and sounded Hispanic” (defendant’s motion to dismiss at 11), defendant fails to proffer any evidence that the NYPD’s policies are intentionally discriminatory or that the officer involved intended to discriminate against defendant. Statistics can sometimes be so overwhelming as to give rise to an inference of discriminatory intent without more (see e.g. Yick Wo v Hopkins, 118 US 356 [1886]); however, defendant’s motion contains no statistical evidence concerning the number of Hispanics and/or non-English-speaking suspects that are denied the PCT on the basis of a “language barrier” compared with non-Hispanics and/or English-speaking suspects, Hispanic or otherwise.
Based on the record at this stage of the proceedings, rational basis review applies. This level of review requires only that the state show that its actions are reasonably related to a legitimate state interest. The People allege that any disparate treatment between non-English-speaking and English-speaking suspects is justified by the state’s interest in avoiding the inaccuracies that would result from poorly translated PCT instructions. (Affirmation in opposition at 6.) The People also allege that administering the PCT in other languages would result in a tremendous financial burden. (Id. at 12-13.)
*795 The court’s “inquiry must focus on whether the action bears a rational relationship to [that] legitimate governmental purpose.” (Soberal-Perez, 717 F2d at 42.) A state action “will be upheld unless the disparate treatment is ‘so unrelated to the achievement of any combination of legitimate purposes that . . . [it is] irrational.’ ” (See Affronti v Crosson, 95 NY2d 713, 719 [2001].) Because it cannot be said that the state action here — i.e., withholding the PCT from suspects who will not understand the PCT — is completely and irrationally untethered from the People’s asserted state interests in avoiding inaccuracies, avoiding confusion, and avoiding complicating the investigatory process, this court is constrained to find a rational relationship. “Rational basis scrutiny is highly indulgent towards the State’s classifications.” (Hernandez v Robles, 7 NY3d 338, 365 [2006] [citation omitted].)
C. Discrimination against Pelegrin
Although not explicitly stated, the court feels it prudent to address an argument that arises by implication from defendant’s reliance on Village of Willowbrook v Olech (528 US 562, 564 [2000]). There, the Supreme Court stated: “Our cases have recognized successful equal protection claims brought by a class of one, where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.” (Id. [internal quotation marks omitted].) Defendant arguably asserts a class-of-one claim based upon the Equal Protection Clause and argues that the NYPD intentionally discriminated against him as an individual. Under such a claim disparate impact is presumably irrelevant. In any event, because courts analyze class-of-one assertions by applying rational basis review (see e.g. Analytical Diagnostic Labs, Inc. v Kusel, 626 F3d 135, 140 [2d Cir 2010]), the reasoning discussed above (see supra at 794-795) forecloses this argument.
II. Due Process Analysis
A. Procedural Due Process
The basic inquiry in all procedural due process cases, as demonstrated in Mathews v Eldridge (424 US 319, 332 [1976]), is whether governmental action has “deprive[d] individuals of ‘liberty’ or ‘property’ interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment [s]. ” (See also District Attorney’s Office for Third Judicial Dist. v Osborne, 557 US 52, 67 [2009] [“We must first examine this asserted liberty interest to determine what process (if any) is *796 due”].) Accordingly, as a threshold matter under Mathews and Osborne, defendant must first establish that a protected interest is at stake since “[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment’s protection of liberty and property.” (Board of Regents of State Colleges v Roth, 408 US 564, 569 [1972].)
Defendant appears to assert the following protected interests: (1) “the ability to provide potentially exculpatory evidence” (defendant’s motion to dismiss at 16); (2) “the opportunity to participate in an otherwise uniformly administered test” (id. at 15); and (3) the right to have a translator available during prearrest tests administered on the field by police officers to secure evidence concerning a defendant’s potential defenses (id. at 19).
In terms of defendant’s first proffered interest noted above, “the ability to provide potentially exculpatory evidence” (id. at 16 [emphasis added]), there does not appear to be, either in New York or federal due process jurisprudence, a right to have various on-the-scene tests administered pre-arrest in order to exculpate (or further incriminate) oneself. There is an access-to-evidence line of case law that establishes that the state must provide access to certain evidence in its control (see California v Trombetta, 467 US 479, 485-486 [1984] [discussing cases]), but those cases do not reach so far as to impose an affirmative obligation on law enforcement to gather on-the-scene evidence concerning potential defenses. Indeed, the Supreme Court in Trombetta discusses the robustness of defendants’ rights not only to access a range of evidence within the state’s control, but also to prevent the government from hampering defendants’ preparation for trial. (Id.) But nowhere in the case law is it suggested that the government must affirmatively create evidence. In addition, defendant has not asserted that his access to existing evidence was in any way hampered such that Brady v Maryland (373 US 83 [1963]) and its progeny would result in a different holding.
Concerning defendant’s second proffered interest, the Supreme Court has recently noted that its “cases have frequently recognized that protected liberty interests may arise from ... an expectation or interest created by state laws or policies.” (Osborne, 557 US at 88-89 [internal quotation marks omitted].) However, the Court has also stated that such an expectation or entitlement “is not a protected entitlement if government officials may grant or deny it in their discretion.” *797 (Castle Rock v Gonzales, 545 US 748, 756 [2005].) The Supreme Court in Gonzales cautioned against interpreting ostensibly mandatory laws as imposing an absolute obligation (and, thus, conferring a right) on law enforcement to take certain action: “A well established tradition of police discretion has long coexisted with apparently mandatory arrest statutes.” (Id. at 760.)
Here, defendant has not proffered any evidence or case law to support his argument that the NYPD has conferred upon potential defendants the absolute right to a PCT. And therefore there are no facts in the record from which to conclude that the PCT is a non-discretionary benefit conferred on suspects by the NYPD.
With respect to the third proffered interest, it is not clear whether defendant is arguing that a protected interest is established on these facts and that therefore the state must provide translator services to comply with due process, or, rather, that the right to translator services is the protected liberty interest at stake. The court has already addressed the former argument and noted that defendant has not proffered a protected due process interest on these facts. (See supra at 796-797.)
As for the latter argument, although “[i]t is a well-established precept of due process that non-English speaking defendants in criminal actions are entitled to an interpreter so that they can meaningfully participate in the trial and assist in their own defense” (People v Rodriguez, 221 AD2d 820, 821 [1995]), this line of case law is inapplicable here. The entitlement to an interpreter is rooted in the Sixth Amendment to the United States Constitution, which encompasses the “right to be meaningfully present at one’s own trial, to assist in one’s own defense, to have effective assistance of counsel and to confront the government’s witnesses on cross examination.” (United States v Mosquera, 816 F Supp 168, 172 [ED NY 1993].) Thus, defendant’s right to an interpreter is available “only at or after the time that adversary judicial proceedings have been initiated against [defendant].” (See Kirby v Illinois, 406 US 682, 688 [1972].) Consistent with this precept, of the courts that have held that a defendant was deprived of a protected interest when not offered an interpreter, all appear to have dealt with post-arrest judicial proceedings. (See e.g. Mosquera, 816 F Supp at 168 [indictment]; People v Robles, 203 AD2d 172, 173 [1st Dept 1994] [Sandoval hearing].) To the extent defendant relies on alleged due process rights arising from the Sixth Amendment, the *798 NYPD’s pre-arrest actions in this case do not fall within the ambit of that case law.
B. Fundamental Right under Substantive Due Process
Defendant also argues that he has a fundamental right that would require the court to apply strict scrutiny even absent a showing of facial discrimination or disparate impact. (Defendant’s motion to dismiss at 12-13.) To reiterate, defendant appears to assert a fundamental right concerning the interrelated rights of (1) his “prospect of defending himself at trial against a BAG reading of .13, and the officers’ subjective impressions of his appearance” (id. at 12); (2) his ability “to provide crucial, and potentially exculpatory, evidence of his coordination and condition” (id. at 12-13); (3) “the opportunity to generate this evidence” (id. at 13); and (4) “[t]he right to present a defense and the corresponding right to access the information necessary to make that defense,” as “core Sixth Amendment guarantees” (id.).
The Supreme Court has laid out a framework for determining whether a fundamental right is implicated in the substantive due process context:
“Our established method of substantive-due-process analysis has two primary features: First, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation’s history and tradition .... Second, we have required in substantive-due-process cases a careful description of the asserted fundamental liberty interest.” (Washington v Glucksberg, 521 US 702, 720-722 [1997] [internal quotation marks and citations omitted].)
In addition, the Court in Osborne cautioned against “recognizing] a freestanding right to . . . evidence untethered from the liberty interests he hopes to vindicate with it.” (557 US at 72.)
This court’s analysis concerning defendant’s asserted liberty and/or property interests (see supra at 795-798) applies in this context as well. Since this court has already noted that defendant’s purported rights do not implicate constitutionally protected interests, defendant’s substantive due process arguments are unavailing as well. In addition, defendant has made no showing and the court is unaware of any case law to support the proposition that the right to pre-arrest translators is deeply rooted in the Nation’s history and tradition for purposes of substantive due process analysis.
*799 For the foregoing reasons, defendant’s motion to dismiss is denied.

. [1] Although higher courts appear not to have condoned (nor prohibited) the use of section 170.30 (1) (f) as the proper vehicle for raising equal protection and due process violations as grounds for dismissal, several lower courts have entertained constitutional claims under section 170.30 (1) (f). (See e.g. People v Prisinzano, 170 Misc 2d 525, 540 [Crim Ct, NY County 1996] [discussing merits of selective enforcement defense in context of motion to dismiss]; see also People v Ayers, 109 Misc 2d 870 [Nassau County Ct 1981] [analyzing equal protection assertion under Criminal Procedure Law § 210.20 (1) (h), the analogous felony provision (see Peter Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A, CPL 170.30)].) Given that alleged constitutional violations of this sort are not otherwise cognizable under any other provision of the Criminal Procedure Law, this court holds that the instant motion to dismiss is properly brought under section 170.30 (1) (f).

. The court has reviewed and relied upon the People’s complaint (complaint); NYPD form PD 244-063 (Rev. 10-00)-Pent, Chemical Test Analysis dated Mar. 25, 2012 (Chem. Test); NYPD form PD 321-149 (0l-0l)-RMU-Pent, Highway District — IDTU Technician Test Report dated Mar. 25, 2012 (IDTU Rep.); and NYPD form PD 244-154B (Rev. 01-01)-RMU-Pent, Intoxicated Driver Examination (Arresting Officer).

. In Skinner v Oklahoma ex rel. Williamson (316 US 535 [1942]), the Supreme Court struck down an Oklahoma statute as unconstitutional because it found that the statute had burdened a fundamental right (the right to procreate) and used strict scrutiny under the Equal Protection Clause to *793 analyze the government’s discrimination. Because fundamental right analysis is the same under both the Equal Protection and Due Process Clauses (see e.g. Bush v Gore, 531 US 98 [2000]; Boddie v Connecticut, 401 US 371 [1971]; Shapiro v Thompson, 394 US 618 [1969]), this court chooses to analyze defendant’s fundamental right allegations under the Due Process Clause. (See infra at 798.) It has been argued that the analysis is only interchangeable with respect to courts’ “initial identification of the implied fundamental right” and “does not carry over into the mode of analysis once that right has been identified.” (Robert C. Farrell, An Excess of Methods: Identifying Implied Fundamental Rights in the Supreme Court, 26 St Louis U Pub L Rev 203, 215 [2007].) Nevertheless, the court need not distinguish the analysis since defendant has not substantiated that he was deprived of any fundamental right in this case.