OPINION OF THE COURT
Elizabeth N. Warin, J.
Defendant, a non-English-speaker of Hispanic origin, moves to dismiss the charges against him pursuant to CPL 170.30 (1) (f) on the ground that the New York City Police Department’s (NYPD) failure to offer him coordination tests after he was arrested for driving under the influence of alcohol and drugs violates the Equal Protection Clause of the United States Constitution and is thus a legal impediment to his conviction.[1] For the following reasons, defendant’s motion is denied.
I. Factual Background
Defendant is charged with driving a motor vehicle while intoxicated and/or ability impaired, in violation of subdivisions (1), (2) and (3) of section 1192 of the Vehicle and Traffic Law. The information alleges that on March 15, 2015 at approximately 1:40 a.m., Officer Sonny Ramcharran observed the defendant operating a motor vehicle while having bloodshot, watery eyes and slurred speech. He detected a strong odor of alcohol emanating from defendant’s breath, and observed that *432 he was unsteady on his feet. At the Huntley/Dunaway/Johnson hearing held on October 15, 2015, Officer Ramcharran testified that he initially spoke to the defendant in English, but when the defendant did not respond, he called over his two Spanish-speaking partners to speak with defendant (see minutes of Oct. 15, 2015 suppression hearing [hearing tr] at 41). Officer Ram-charran testified that he speaks conversational Spanish, but is not fluent (id.).[2] The information alleges that the defendant admitted to Officer Ramcharran that he drank two beers.
After his arrest, defendant was taken to the 45th Precinct for “a DWI investigation” (id. at 29).[3] The IDTU videotape shows Officer Delacruz, the IDTU technician, asking defendant in English whether he consented to a breath test, and then playing a Spanish language video that asked for defendant’s consent.[4] Defendant consented to the test, and thereafter Officer Delacruz spoke to defendant in Spanish and performed the test (id. at 30, 59). The chemical test analysis form filed in this matter indicates that defendant was administered an Intoxi-lyzer 5000 breath test at 3:37 a.m. by Police Officer Delacruz with the result showing defendant’s blood alcohol content as .148 of one percent by weight.
The IDTU videotape further shows that after the breath test was performed, Officer Delacruz stated that he would “skip” the coordination tests because there are no Spanish language instructions for the tests. Officer Delacruz also stated that no Miranda warnings would be given as there were also no Spanish instructions for the warnings and the arresting officer was not fluent in Spanish.
It is not disputed that the IDTU technician in this case is fluent in Spanish, as the People concede as much, and it is ap *433 parent from the IDTU video the officer easily conversed with the defendant in Spanish (see People’s response at 3). Further, while the NYPD Patrol Guide adopts a permissive approach to bilingual officers to utilize their language skills to communicate “if he or she reasonably believes that his or her level of language proficiency is sufficient to accurately interpret given the totality of the circumstances,”[5] it is also not in dispute that it is NYPD policy to offer coordination tests for intoxicated/ impaired drivers only to arrestees who can communicate in English (see defendant’s motion at 8; People’s response at 3). Lastly, it is not disputed that pursuant to the same NYPD Patrol Guide, for intoxicated or impaired driver arrests, an IDTU technician is to perform coordination tests in the presence of the arresting officer (see NYPD Patrol Guide Procedure No. 208-40 ¶ 28).[6]
II. Equal Protection Analysis
The Fourteenth Amendment to the United States Constitution provides “[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws.” Equal protection violations are analyzed under either “strict scrutiny” or a “rational basis” standard of review (see People v Aviles, 28 NY3d 497, 503 [Nov. 22, 2016]). When the challenged action disadvantages a suspect class or burdens a fundamental right, the conduct is subject to “strict scrutiny” and will be upheld only if the government establishes compelling justification for the action (id.). Where a suspect class or fundamental right is not implicated, the action need only be rationally related to a legitimate government purpose to be upheld (id.; People v Salazar, 112 AD3d 5, 9 [1st Dept 2013]).
In Aviles, the Court of Appeals upheld the NYPD practice of not administering coordination tests to non-English speakers from an equal protection challenge under a rational basis *434 review. The Aviles court found that the NYPD policy was based on a person’s ability to speak and understand English, not on any of the suspect classifications of race, religion or national origin, and was therefore facially neutral (see Aviles at 502-503; see also Salazar at 9-10). In applying rational basis review, the Court held that the NYPD and the public have a substantial interest in ensuring the reliability of coordination tests, an outcome which is largely dependent on the clarity and consistency of the instructions provided by the officer (id. at 503-504). Further, the length of the instructions, the requirement of interaction with the arrestee and assessment of his or her responses to the instructions, render the coordination tests ill-suited for delegation to either a translator or video instructions (id.). In addition, the Aviles court held that the NYPD had an interest in avoiding the “heavy financial and administrative burdens of employing translation services or multilingual officers qualified to administer coordination tests in the myriad languages spoken in this state.” (Id. at 504.)
Defendant first argues that the reasons set forth for the Aviles decision upholding the NYPD policy denying coordination tests to non-English speakers are not supported by the record here, as a trained IDTU technician fluent in Spanish was available and competent to administer the coordination tests (see defendant’s motion at 9). However, the absence of a language barrier between an individual officer and an individual non-English speaking arrestee, coupled with the decision not to administer the coordination tests in accordance with the NYPD policy for all non-English speakers, does not render the Aviles holding inapplicable to this situation. Regardless of whether in some instances the officer may be able to communicate fluently or whether the NYPD has determined officers may utilize their language skills in other situations (see e.g. Salazar at 11), there remains a substantial state interest in reliable coordination test results that are not subject to the variances of particular degrees of language competence, and/or in avoiding the expense of providing either translators or multilingual IDTU technicians to meet the language requirements for New York City’s entire diverse population of arrest-ees for intoxicated driving (see Aviles at 503-504; Salazar at 12 [citing to data from 2007 identifying 170 distinct languages spoken in New York courts]). That some officers will be fluent in the language spoken by a particular arrestee does not render the policy irrational or unrelated to the State’s objectives, nor *435 does it change the well-established rule that the court is not permitted to "substitute [its own] judgment for the discretionary management of public business by public officials” (Salazar at 12).
Facially neutral conduct may still violate a suspect class’s equal protection rights if there is a showing of intentional discrimination (see Aviles at 503; Salazar at 10; Soberal-Perez v Heckler, 717 F2d 36, 42 [2d Cir 1983]; People v Pelegrin, 39 Misc 3d 788, 794 [Crim Ct, Bronx County 2013]). Intentional discrimination requires a showing that “the decisionmaker . . . selected or reaffirmed a particular course of action at least in part ‘because of’ not merely ‘in spite of’ its adverse effects upon an identifiable group” (Soberal-Perez at 42, quoting Personnel Administrator of Mass, v Feeney, 442 US 256, 279 [1979]). As the Aviles court acknowledged, “upholding the facial validity of the NYPD policy does not preclude all challenges to the policy as applied to a particular defendant where, for instance, the defendant was denied a coordination test on the basis of his ethnicity, as opposed to any language barrier” (see Aviles at 503). Further, it is established that language may be “treated as a surrogate” for ethnicity or as a “pretext for racial discrimination” (Aviles at 503, quoting Hernandez v New York, 500 US 352, 371-372 [1991]).
Here, the defendant argues that the Officer’s decision not to administer the coordination tests was based on the defendant’s ethnicity, and therefore, strict scrutiny analysis must apply (see defendant’s mem of law at 9-10, 12). The sole “fact” alleged in support of this argument is that Officer Delacruz was able to communicate with the defendant in Spanish, and therefore, “the only reasonable inference to be drawn ... is that defendant was denied the tests because he was Hispanic” (id.). The court disagrees. Even assuming Officer Delacruz may have been capable of providing his own version of the English instructions translated into Spanish, for the purpose of conducting the coordination tests, there is no factual support for defendant’s assertion that the Officer’s decision not to do the coordination test was based on a discriminatory animus towards Hispanics. Indeed, the record suggests otherwise: Officer Delacruz willingly showed the defendant the Spanish video regarding the breathalyzer test and administered that test to the defendant while explaining the procedure in Spanish. The court finds no reason to doubt Officer Delacruz’s stated reason that there were no translated instructions for the coordination *436 tests and that he therefore complied with NYPD policy in place for all non-English speakers.
To the extent the defendant attempts to frame this motion as a “class of one” equal protection challenge (see defendant’s motion at 6, citing Village of Willowbrook v Olech, 528 US 562, 564 [2000]), there is no indication that the defendant was “intentionally treated differently from others similarly situated” without any rational basis for the difference in treatment (id.; accord Pelegrin, 39 Misc 3d at 795). To the contrary, the record reflects that the defendant was treated the same as every other non-English speaker under the NYPD policy for DWI arrestees, and as set forth, supra, this policy survives rational basis review even when the arrestee happens to speak the same language as the IDTU officer.
The court finds no basis in the record for an inference of intentional discrimination in the denial of the administration of the coordination tests to this individual defendant, nor any other compelling reason or circumstances suggesting the facially neutral policy of the NYPD for all non-English speakers was a ruse for discrimination against a suspect classification. Accordingly, there is no basis for defendant’s claim of a violation of his rights to equal protection and, accordingly, defendant’s motion to dismiss pursuant to CPL 170.30 (1) (f) is denied.

. In deciding this motion, the court has considered defendant’s motion to dismiss filed on December 16, 2016 consisting of defense counsel’s affirmation, a memorandum of law, and the following six exhibits—exhibit 1, October 14, 2015 minutes of the suppression hearing held in this case; exhibit 2, March 11, 2015 minutes of testimony of Police Officer Delacruz in People v Owolabi, docket No. 2014BX058151; exhibit 3, the video of defendant taken at the Intoxicated Driver Testing Unit (IDTU) after his arrest; exhibit 4, the NYPD Patrol Guide Procedure No. 208-30, Intoxicated or Impaired Driver Arrest, issued on August 19, 2013, and Procedure No. 212-90, Guidelines for Interaction with Limited English Proficient (LEP) Persons; exhibit 5, the Court of Appeals decision in People v Aviles (28 NY3d 497 [Nov. 22, 2016]); exhibit 6, NYPD Language Access Plan revised on June 14, 2012, as well as the People’s response dated December 28, 2016, and the defendant’s reply letter dated and filed January 20, 2017. The court has also reviewed the chemical test analysis form dated March 15, 2015 located in the court file.

. The NYPD Patrol Guide Procedure No. 212-90, Guidelines for Interaction with Limited English Proficient (LEP) Persons, encourages members of the service, who are not certified interpreters, but who possess language skills, to use their ability to speak a foreign language during the course of their work, but does not require them to do so. A non-certified officer may interpret a foreign language if he or she reasonably believes that his or her level of language proficiency is sufficient to accurately interpret given the totality of the circumstances.

. Officer Ramcharran testified that defendant was taken to the 45th Precinct, where DWI investigations are conducted, not the 40th Precinct (id. at 55).

. At the suppression hearing, Officer Ramcharran testified that Officer Delacruz asked defendant in Spanish whether defendant consented to the breath test (id. at 30).

. NYPD Patrol Guide Procedure No. 212-90.

. Officer Ramcharran testified that Officer Delacruz offered to administer the coordination tests but could not do so because he was not the arresting officer (see hearing tr at 60-61), an interchange that was not recorded on the videotape and which appears to be inconsistent with the NYPD Patrol Guide directives. The officer also testified that Officer Delacruz asked him to do the coordination tests but the officer declined to do so because of the language barrier (id.). Given the People’s position that a bilingual IDTU officer was available to perform the coordination tests, these assertions are not relevant to the court’s decision and, therefore, their apparent contradictions with the NYPD procedure will be left unresolved.