OPINION OF THE COURT
Barbara F. Newman, J.
Defendant moves pursuant to Criminal Procedure Law § 440.10 to vacate his judgment of conviction on the grounds that pursuant to People v Peque (22 NY3d 168 [2013]), the court had a duty to advise him of the immigration consequences associated with entry of his plea of guilty but it failed to do so. Defendant contends that had the court advised him that his plea to attempted criminal sale of a controlled substance in the third degree (Penal Law §§ 110.00, 220.39) constituted an aggravated felony under the immigration law and thereby mandated his deportation, he would have insisted that his attorney pursue a more favorable plea or he would have gone to trial.
The People oppose defendant’s motion on the grounds that defendant’s claim is procedurally barred pursuant to CPL 440.10 (2) (c). Further, the People contend that defendant is not entitled to the relief he seeks pursuant to the recent decision in People v Peque, because the new rule of law announced in Peque does not apply retroactively.
*459 The court has reviewed the applicable law and the following documents: (1) defendant’s motion dated February 17, 2014; (2) defense counsel’s affirmation in support of motion to vacate conviction dated February 17, 2014; (3) the People’s affirmation in opposition dated April 15, 2014; and (4) the People’s memorandum of law dated April 15, 2014.
Procedural History
The procedural history detailed below was derived from defendant’s motion.
On October 7, 1998, defendant pleaded guilty to attempted criminal sale of a controlled substance in the third degree (Penal Law §§ 110.00, 220.39) and was promised a non-incarceratory sentence if he complied with the conditions imposed by the court. In order to receive the promised non-incarceratory sentence the court required defendant to continue working and not be rearrested.
On June 3, 1999, having complied with the previously imposed conditions, defendant was sentenced in accordance with the agreed upon plea bargain to a conditional discharge. Defendant did not appeal his conviction.
In a sworn affidavit dated February 12, 2014, defendant avers that in 2011, he was denied renewal of his expired green card because of his felony criminal conviction. (Defendant’s exhibit A.) Defendant consulted an immigration attorney, who advised him that his conviction subjected him to mandatory deportation. As of February 17, 2014, when this motion was filed, there were no immigration proceedings pending against the defendant.
Now, through counsel, defendant moves to vacate his plea of guilty pursuant to People v Peque, on the grounds that the court was obligated to inform him that his plea of guilty constituted an aggravated felony under immigration law and subjected him to mandatory deportation.
The People oppose defendant’s motion and contend that defendant’s claim is procedurally barred inasmuch as the alleged defect in the plea allocution is record based and should have been raised on a direct appeal. Additionally, the People contend that the recent decision in Peque has created a new rule of law which should not be applied retroactively.
Conclusions of Law
Pursuant to CPL 440.10 (2) (c) a motion to vacate a judgment of conviction must be denied when
*460 “[although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant’s unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him.”
A CPL 440 motion is not intended to serve as a substitute for a direct appeal when the record is sufficient to permit appellate review (see People v Cuadrado, 9 NY3d 362 [2007]). An alleged defect which is apparent on the record must be reviewed on direct appeal (see People v Cooks, 67 NY2d 100 [1986]; see also People v Acevedo, 104 AD3d 610 [1st Dept 2013] [collateral review of sufficiency of plea allocution is barred by CPL 440.10 (2) (c)]).
The issue raised by defendant in this CPL 440 motion could have been raised on direct appeal. However, defendant did not file an appeal nor has he offered any explanation for his failure to do so. Accordingly, defendant’s motion to vacate his judgment of conviction is barred by CPL 440.10 (2) (c).
Assuming, arguendo, that defendant’s motion is not procedurally barred, the issue to then be determined is whether or not the recent Court of Appeals decision in Peque applies retroactively and thereby entitles defendant to relief.
In 1995 the Criminal Procedure Law was amended to require the court to inform all noncitizen defendants entering a guilty plea of the possibility of adverse immigration consequences associated with entry of the plea (L 1995, ch 3, § 30). However, in a caveat, CPL 220.50 (7) provides that
“[t]he failure to advise the defendant pursuant to this subdivision shall not be deemed to affect the voluntariness of a plea of guilty or the validity of a conviction, nor shall it afford a defendant any rights in a subsequent proceeding relating to such defendant’s deportation, exclusion or denial of naturalization.”
Shortly after the 1995 amendment to the Criminal Procedure Law, the Court of Appeals rendered a decision in People v Ford (86 NY2d 397 [1995]), which directly addressed the court’s obligation to noncitizen defendants with respect to immigration, holding that *461 deportation was a collateral consequence as it was peculiar to the personal circumstances of a particular defendant and not inevitably mandated by a plea. As such, the court’s failure to advise a defendant on these collateral consequences did not invalidate an otherwise proper guilty plea.
In 2013, the New York Court of Appeals reexamined the issue of immigration consequences after acknowledging the intimacy between modern immigration law and the criminal justice system. In People v Peque (22 NY3d 168 [2013]), the New York Court of Appeals specifically addressed the court’s obligation to advise a noncitizen defendant, preplea, of potential deportation consequences in association with three appeals.* On appeal, the contention of each defendant was that his plea of guilty should be vacated because of the trial court’s failure to provide constitutionally mandated notice of a critically important consequence of the plea, to wit: the potential of deportation. After engaging in a retrospective analysis of the changes in immigration laws and the increase in noncitizen defendants who are entering pleas on felonies in New York, the Court held that “trial courts must now make all defendants aware that, if they are not United States citizens, their felony guilty pleas may expose them to deportation.” (Peque at 197.) The rationale for the Court’s decision is grounded in the finding that
“deportation is a plea consequence of such tremendous importance, grave impact and frequent occurrence that a defendant is entitled to notice that it may ensue from a plea. We therefore hold that due process compels a trial court to apprise a defendant that, if the defendant is not an American citizen, he or she may be deported as a consequence of guilty plea to a felony.” {Peque at 176.)
The Court of Appeals further opined that the court’s failure to apprise a defendant of the possibility of deportation does not automatically entitle a defendant to vacatur of his plea. To prevail in a motion to vacate a plea, for lack of immigration warnings by the plea court, a defendant must establish the existence of a reasonable possibility that if he had been properly warned of the potential deportation consequence, he would have rejected the plea and insisted on going to trial. (Peque at 176.)
In Peque, the Court of Appeals stated that “[t]o avoid any confusion about the scope of our decision, we emphasize that it is quite narrow.” (Peque at 196.)
*462 “To the extent Ford stands for the proposition that the court’s complete omission of any discussion of deportation at the plea proceeding can never render a defendant’s plea involuntary, that discrete portion of our opinion in Ford ‘no longer serves the ends of justice or withstands the cold light of logic and experience.’ ” (Peque at 195, quoting Policano v Herbert, 7 NY3d 588, 604 [2006].)
“We therefore overrule only so much of Ford as suggests that a trial court’s failure to tell a defendant about potential deportation is irrelevant to the validity of the defendant’s guilty plea.” (Peque at 196-197.) Most notably, the Court stated that they did not intend to eradicate the distinction between direct and collateral consequences and the
“opinion should [not] be construed as casting doubt on the long-standing rule that, almost invariably, a defendant need be informed of only the direct consequences of a guilty plea and not the collateral consequences. We continue to adhere to the direct/ collateral framework, and we do not retreat from our numerous prior decisions holding a variety of burdensome consequences of a guilty plea to be strictly collateral and irrelevant to the voluntariness of a plea.” (Peque at 196 [citations omitted].)
Defendant contends that the Court of Appeals intended its decision in Peque to be applied retroactively, and that therefore he is entitled to relief. The defendant draws this inference from the facts of one of the cases that was part of the Peque decision: People v Richard Diaz.
Defendant contends he is in a similar position to Diaz, who had pleaded guilty in 2006 and then challenged his seven-year-old plea on the grounds that before pleading he was not advised by the court that his plea mandated deportation. The instant defendant, like Diaz, entered his plea after enactment of the Illegal Immigration Reform and Immigrant Responsibility Act (hereinafter IIRIRA), which made deportation a mandatory rather than discretionary consequence of a felony plea. Because Diaz was potentially entitled to relief, the defendant infers that the Court of Appeals intended the Peque decision to apply to all defendants who entered a plea on a drug-related felony after enactment of the IIRIRA, even if the plea occurred and was final years before the Peque decision.
To the contrary, the People contend that the defendant’s situation is distinguishable from Diaz because at the time of the *463 Peque decision, Diaz’s conviction had not become final and his claim was raised on direct appeal. Further, they state that contrary to the status of Mr. Diaz’s case, defendant’s conviction is final and he has raised his claim by way of a CPL 440 motion. The People contend that since at the time of decision of the Diaz case’s appeal, the conviction of Diaz was not final, the new rule enunciated in Peque was applicable simply because “[u]nder traditional common-law principles, cases on direct appeal are generally decided in accordance with the law as it exists at the time the appellate decision is made” and not because Peque was retroactive (see People v Jean-Baptiste, 11 NY3d 539, 542 [2008], citing People v Vasquez, 88 NY2d 561, 573 [1996]).
To allow the retroactive application to final convictions, the Court of Appeals noted its “concern for congesting the courts with a multitude of motions by defendants with long-standing final convictions.” (<Jean-Baptiste at 543, citing Policano v Herbert, 7 NY3d 588, 604 [2006].) At the time defendant’s conviction became final, Ford was still good law.
The People contend and defendant has acknowledged that Peque has announced a new principle of law. The issue which this court must determine is whether the decision in Peque is retroactive. The three factors which guide this decision have been referred to as the Pepper/Mitchell factors (see People v Pepper, 53 NY2d 213, 220 [1981]; People v Mitchell, 80 NY2d 519, 526 [1992]). The factors are: (1) the purpose to be served by the new rule; (2) the extent of reliance on the old rule; and (3) the potential effect on the administration of justice giving retroactive effect to the new rule.
First the court must determine if the new rule is one which in any way would affect the determination of guilt or innocence (see People v Favor, 82 NY2d 254, 265 [1993]). A new rule unrelated to the fact-finding process and in no way impacting guilt or innocence should only be applied prospectively (see People v Martello, 93 NY2d 645, 652 [1999]). The new rule enunciated in Peque does not bear on guilt or innocence but instead relates to immigration consequences associated with a plea. Accordingly, under the Pepper/Mitchell analysis, the first factor weighs against retroactive application of the Peque rule as it does not impact guilt or innocence.
The second factor for consideration is the extent of reliance on the old rule. In Peque, the Court of Appeals acknowledged that its characterization of deportation as a collateral consequence in Ford was a long-standing precedent whose vitality *464 was never in doubt in light of the numerous approving citations of Ford in cases involving immigration matters. Prosecutors relied on Ford, offering countless plea bargains and recommending acceptance of the offers. Therefore, broad reliance on the old law weighs against retroactive application.
The third factor to be considered is the effect of retroactivity on the administration of justice. As noted by the Court in Peque, there has been a continuous rise in the number of noncitizen defendants entering pleas on felonies in New York. Retroactive application of the Peque rule would undoubtedly bring on a deluge of challenges, each of which would potentially require a hearing to determine the issue of prejudice. Ultimately, retroactive application to convictions that were final would drain judicial resources, potentially create a backlog of cases, and impede the administration of justice on pending cases. As such, this factor strongly weighs against retroactive application of the Peque rule.
The court has considered the three Pepper/Mitchell factors and notes that each weighs against retroactive application of the new rule enunciated in Peque.
In light of the above, defendant’s motion is denied. It is procedurally barred and, even if it were not so barred, on its merits it fails as Peque, not being retroactive, is not applicable to this case.

 The Court of Appeals decision was a consolidation of the cases of three defendants: Juan Jose Peque; Richard Diaz; and Michael Thomas.