[994 NYS2d 500]

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v STANLEY MOTHERSIL, Defendant.

Criminal Court of the City of New York, Kings County, August 6, 2014

### APPEARANCES OF COUNSEL

*Appellate Advocates* (*Lynn W.L. Fahey* and *Mark W. Vorkink* of counsel) for defendant.

*Kenneth P. Thompson, District Attorney* (*Leonard Joblove, Victor Barall* and *Terrence F. Heller* of counsel), for plaintiff.

### OPINION OF THE COURT

RICHARD J. MONTELIONE, J.

Defendant moves, pursuant to Criminal Procedure Law § 440.10 (1) (h), for an order vacating the judgment of conviction and sentence entered against him. On November 15, 2001, defendant pleaded guilty to attempted third-degree assault (Penal Law §§ 110.00, 120.00 [1]). Defendant now asserts that he received inadequate assistance of counsel because he was not informed of the deportation risks at the time of his guilty plea. For the reasons stated herein, defendant's motion is denied in its entirety.

### Statement of Facts and Procedural Background

Defendant is a citizen of Haiti. He was born in Port-au-Prince on (redacted), and came to the United States when he was nine years old. He has remained in the United States as a lawful permanent resident since then, except for one visit to Haiti in 1993 to attend his mother's funeral.

Defendant contracted polio as a child. His doctor reported that, as a result, he has permanent neurological and muscular damage. She also reported that he may suffer from post-polio syndrome, but that she could not make that determination without further evaluation by specialists, and that should he, in fact, have post-polio syndrome, he may at some point be unable to use his arms or legs, and may have significant respiratory compromise, which could lead to an early death.

On July 2, 2001, defendant was arrested and charged by felony complaint with two counts of attempted robbery in the second degree (Penal Law §§ 110.00, 160.10 [1], [2] [a]), and one count of attempted robbery in the third degree (Penal Law §§ 110.00, 160.05). On July 6, 2001, the People reduced the charges to misdemeanors. Among the reasons given by the People for reducing the charges were that the complainants had not suffered physical injuries, that this had been defendant's

first arrest, and that he did not have a prior criminal conviction. The People filed a superseding information that charged defendant with attempted assault in the third degree (Penal Law §§ 110.00, 120.00 [1]), menacing in the third degree (Penal Law § 120.15), attempted grand larceny in the fourth degree (Penal Law §§ 110.00, 155.30 [5]), and attempted petit larceny (Penal Law §§ 110.00, 155.25).

On November 15, 2001, defendant pleaded guilty to attempted third-degree assault, and in full satisfaction of the charges received a sentence of a conditional discharge with 10 days of community service. During the allocution on this plea, the court confirmed that (1) defendant wished to plead guilty; (2) no one was forcing him to plead guilty; and (3) he understood he was giving up his right to trial and to confront witnesses against him, among other rights. At no time, however, did the court warn defendant that there might be immigration consequences to his guilty plea, including the possibility of deportation.

This is not defendant's only contact with the criminal justice system. On July 24, 2003, defendant pleaded guilty to the felony charge of attempted robbery in the second degree (Penal Law §§ 110.00, 160.10 [1]). In satisfaction of that plea, he was promised and received a sentence of 2½ years in prison. On March 7, 2011, he pleaded guilty in Cumberland County, Maine to unlawful trafficking in scheduled drugs (17-A Me Rev Stat § 1103 [1-A] [A]). On that charge he received a sentence of five years in prison, all but one year suspended, and two years of probation. He completed the unsuspended part of his sentence on June 11, 2012, but he subsequently moved to have that conviction vacated on the grounds that he had not been informed of the immigration consequences of his plea. During his allocution on the plea, he falsely told the Maine court that he was a United States citizen. Despite that falsehood, the Maine court granted defendant's motion to vacate the judgment of conviction, finding, inter alia, that he had not been properly warned of possible immigration consequences and that there was a reasonable probability that had he been warned, he would not have pleaded guilty. Defendant has also moved, pursuant to CPL 440.10, in Supreme Court to vacate his 2003 plea. That motion is pending.

On June 13, 2012, the Department of Homeland Security, Immigration and Customs Enforcement (ICE) served defendant with a notice to appear, alleging that defendant was removable from the United States as a result of his Maine conviction. After

the Maine court vacated the judgment of conviction, ICE amended the notice to appear, charging that his New York attempted robbery conviction rendered him removable from the United States. Subsequently, the United States Immigration Court issued a final order of removal. Defendant has appealed that order.

By the instant motion, defendant seeks to have his 2001 misdemeanor plea vacated. He argues that his conviction for attempted third-degree assault constitutes a crime involving moral turpitude (CIMT) for immigration purposes, and that a CIMT conviction adversely affects his ability to obtain citizenship because it makes it difficult, if not impossible, to demonstrate the "good moral character" necessary for naturalization. (*See* 8 USC § 1101 [f] [3]; 8 CFR 316.10 [b] [2] [i]; [3] [iii].) Moreover, he argues, any CIMT conviction exposes him to risk of deportation. (8 USC § 1227 [a] [2] [A].) He asserts that had he known these facts, he would not have agreed to plead guilty to a CIMT, and would have instead, sought to plead guilty to a non-CIMT offense.

## Legal Analysis

In 2010, the United States Supreme Court held that the Sixth Amendment requires defense attorneys to inform noncitizen clients of the deportation risks of guilty pleas. (*Padilla v Kentucky*, 559 US 356 [2010].) A failure to do so constitutes inadequate assistance of counsel. (*Id.*) Subsequently, in *Chaidez v United States* (568 US —, 133 S Ct 1103 [2013]), the Supreme Court held that *Padilla* does not apply retroactively to cases finally determined, and which are no longer on direct review. In 2013, the Second Department held that, under New York law, the *Padilla* rule is not retroactive for cases not on direct review. (*People v Andrews*, 108 AD3d 727 [2d Dept 2013].) Similarly, the Court of Appeals recently held that, under New York law, *Padilla* will not be applied retroactively to cases not on direct review. (*People v Baret*, 23 NY3d 777 [2014].)

Defendant's plea and sentencing were final nine years prior to the decision in *Padilla*. Under *Padilla*, *Chaidez*, and *Baret*, therefore, defendant's motion would have to be denied.

It is noteworthy that in November 2013, the New York Court of Appeals held that

> "deportation is a plea consequence of such tremendous importance, grave impact and frequent occurrence that a defendant is entitled to notice that it

may ensue from a plea. We therefore hold that *due process compels a trial court to apprise* a defendant that, if the defendant is not an American citizen, he or she may be deported as a consequence of a guilty plea to a felony." (*People v Peque*, 22 NY3d 168, 176 [2013] [emphasis added].)

Although the case at bar involves a plea to a misdemeanor rather than a felony, the potential immigration consequences are equally severe, and the due process concerns are identical. The court, therefore, does not hesitate to extend the reasoning in *Peque* to cases involving misdemeanor pleas. The Court of Appeals did not consider extending its determination to misdemeanors. "Given that defendants were convicted of felonies here, we have no occasion to consider whether our holding should apply to misdemeanor pleas." (22 NY3d at 197 n 9.)

The issue is whether *Peque* is retroactively applicable to the instant case. The court is cognizant of the Court of Appeals' stated "concern for congesting the courts with a multitude of motions by defendants with long-standing final convictions." (*People v Jean-Baptiste*, 11 NY3d 539, 543 [2008], citing *Policano v Herbert*, 7 NY3d 588, 604 [2006].) Moreover, the rationale of *Baret* requires that *Peque* not be applied retroactively. This matter is only the subject of a motion under CPL 440.10 inasmuch as any and all appellate issues have long been laid to rest.

According to the Court of Appeals, three factors guide the determination of retroactivity of a new principle of law. These factors are often referred to as the *"Pepper/Mitchell"* factors, after the cases that enumerated them: *People v Pepper* (53 NY2d 213 [1981], *cert denied* 454 US 967 [1981]) and *People v Mitchell* (80 NY2d 519 [1992]). The factors are: (1) the purpose to be served by the new rule; (2) the extent of reliance on the old rule; and (3) the potential effect on the administration of justice giving retroactive effect to the new rule.

In *Baret*, the Court of Appeals applied these factors to *Padilla*, and held that *Padilla* has no retroactive effect under New York law. The Court of Appeals first noted that *Padilla* "has nothing to do with a reliable determination of guilt or innocence," and so the first *Pepper/Mitchell* factor weighed against retroactivity. (23 NY3d at 800.) With respect to the second factor, the Court noted that lawyers had long relied upon the Court's prior holding in *People v Ford* (86 NY2d 397 [1995]) in

understanding their obligations to provide immigration advice.*
With respect to the third factor—the effect of retroactive application upon the administration of justice—the Court held
that a trial court would have to make factual findings based on
faded memories, and that "[s]uch considerations, coupled with
the sheer volume of prosecutions disposed of by guilty plea . . .
weigh heavily against retroactive application of *Padilla*." (23
NY3d at 800.)

The same logic applies here. The only difference is that the
failure of the sentencing court to supply any warnings regarding possible immigration consequences is known. But the balance of any further analysis of the second *Pepper/Mitchell* factor
will rely on the same faded memories. Moreover, the *Baret*
Court's weighing of the first and third *Pepper/Mitchell* factors
are identical here. For these reasons, this court finds that *Peque*
does not apply retroactively. Other courts have so held. (*See
People v Moran*, 44 Misc 3d 1205[A], 2014 NY Slip Op 51018[U]
[Sup Ct, Bronx County, June 30, 2014]; *People v Lovejoy*, 44
Misc 3d 457 [Sup Ct, Bronx County, June 11, 2014].)

In sum, under both federal and New York law, neither *Padilla*
nor *Peque* have retroactive application once a matter is no longer on direct review. The court therefore denies defendant's motion in its entirety.

---

* *Ford*, for the most part, is still good law. In her helpful summary of the
holding in *Peque*, Judge Abdus-Salaam noted that a majority of the Court
"reaffirms the central holding of *Ford* regarding the duties of a trial court and
the distinction between direct and collateral consequences of a guilty plea, and
we make clear that our precedent in this area is not otherwise affected by
today's decision." (*People v Peque*, 22 NY3d 168, 176 [2013].)