[2 NYS3d 320]

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v JERRY PROVINCE, Defendant.

Supreme Court, New York County, January 8, 2015

**APPEARANCES OF COUNSEL**

*Jerry Province*, pro se, and *Michael Fineman*, New York City, for defendant.

*Cyrus R. Vance, Jr.*, *District Attorney*, New York City (*Ryan Hayward* of counsel), for plaintiff.

## OPINION OF THE COURT

MARCY L. KAHN, J.

On June 27, 2014, defendant Jerry Province was convicted after a jury trial of one count of assault in the second degree (Penal Law § 120.05 [3]), one count of obstructing governmental administration in the second degree (Penal Law § 195.05) and one count of resisting arrest (Penal Law § 205.30). The People sought to have defendant adjudicated a second violent felony offender (Penal Law § 70.04 [1]) pursuant to CPL 400.15 and sentenced accordingly. Citing CPL 400.15 (7) (b), defendant, then acting pro se, challenged the People's proposed adjudication on the ground that the proposed predicate violent felony convictions upon which that adjudication would be based were obtained in violation of his federal constitutional rights and therefore could not serve as predicate felony convictions in this case. The convictions in question are defendant's convictions upon his pleas of guilty on November 18, 1999, in Supreme Court, Kings County, to burglary in the second degree, a class C violent felony (Penal Law § 140.25 [2]), under each of two indictments (*People v Province*, Sup Ct, Kings County, indictment Nos. 3581/99, 4710/99) (1999 convictions or 1999 plea cases), for which he received concurrent sentences of four years' imprisonment on December 3, 1999. The People maintained that the violation in question is not of a federal constitutional nature affecting predicate sentencing enhancement and that the alleged violation could not be retrospectively challenged either under the law applicable at the time of defendant's plea or under the current law as applied to defendant's plea under general principles of retroactivity.

On November 21, 2014, this court determined, in an oral ruling, that defendant was not procedurally barred from challenging the federal constitutionality of his 1999 convictions in the instant predicate sentencing proceeding; that defendant's 1999 convictions were obtained in violation of his federal constitutional rights under *People v Catu* (4 NY3d 242 [2005]); and that they could not serve as predicate felony convictions for sentence enhancement purposes here. This court then adjudicated defendant a first violent felony offender and sentenced him accordingly. (Penal Law § 70.02 [2] [a].)[1] This written decision and order further explains the court's determination.

---

1. On December 5, 2014, this court issued a written order reflecting the court's November 21 adjudication and sentence.

## I. Posttrial Procedural Background

As stated, on June 27, 2014, after a jury trial,[2] defendant was convicted, inter alia, of one count of assault in the second degree (Penal Law § 120.05 [3]), a class D violent felony offense. On August 8, 2014, this court commenced a predicate adjudication hearing pursuant to CPL 400.15 at which the People sought to have defendant adjudicated a second violent felony offender (Penal Law § 70.04) based upon defendant's 1999 convictions. During oral argument, defendant, appearing pro se, challenged the use of the 1999 convictions as predicate violent felony convictions on the ground that those convictions were obtained in violation of his rights under the Constitution of the United States due to the failure of the plea court to inform defendant that his sentences in each case would include a period of postrelease supervision. The predicate adjudication hearing was subsequently adjourned to September 2, 2014.

On September 2, 2014, the predicate adjudication hearing continued, with further oral argument concerning the constitutionality of the 1999 convictions. This court adjourned the proceeding for the People and defendant's legal advisor to submit written briefs in support of their respective positions.

By amicus curiae letter brief dated September 24, 2014, Michael Fineman, Esquire, then legal advisor to defendant, argued that defendant's 1999 convictions were obtained in violation of *People v Catu*, in that the sentencing court failed to advise defendant that his sentences would each include a period of postrelease supervision (PRS). Counsel argued that defendant's pleas were thus not knowingly, intelligently or voluntarily entered, violating defendant's rights to due process under the Federal Constitution, rendering them unavailable as predicate felony convictions for sentencing enhancement purposes in this case. (*See* CPL 400.15 [7] [b].)

On October 6, 2014, the People served and filed their response to the amicus curiae letter brief (affirmation of Ryan Hayward, Esquire, dated Oct. 6, 2014), asserting that a *Catu* error does not constitute a federal constitutional violation for

---

**2.** Defendant appeared pro se at trial and initially in his sentencing proceeding.

purposes of such proceedings. Citing *People v Catalanotte* (72 NY2d 641 [1988]), the People further argued that, in any case, the 1999 convictions could not be challenged as violative of the 2005 *Catu* rule either under the law then in existence, or by retroactive application of the *Catu* ruling to defendant's 1999 convictions.

On October 9, 2014, defendant refused to be produced by the New York City Department of Correction for his court appearance. Due to defendant's refusal to appear, this court withdrew defendant's right to pro se representation and reassigned Mr. Fineman as his defense counsel. The predicate hearing was further adjourned for a further submission by defense counsel, to be followed by the court's ruling on defendant's predicate status on November 21, 2014.

On October 16, 2014, this court received a memorandum of law from defense counsel Fineman in further support of defendant's position. On November 21, 2014, with defendant present, the court issued its oral ruling, granting the defense motion precluding enhanced sentencing of defendant on the ground that the 1999 convictions violated defendant's federal constitutional rights under *Catu*. Defendant was sentenced as indicated as a first violent felony offender.

## II. Discussion

### A. Legal Standard

To establish that a defendant is subject to sentencing as a second violent felony offender under Penal Law § 70.04, the People have the burden of proving beyond a reasonable doubt that the defendant has been subjected to the predicate violent felony conviction in question. (CPL 400.15 [7] [a]; *People v Konstantinides*, 14 NY3d 1, 15 [2009]; *People v Harris*, 61 NY2d 9, 145 [1983].) Once the People have satisfied this requirement, the burden shifts to the defendant to prove that the conviction was unconstitutionally obtained, offering sufficient facts to overcome the presumptions of validity and regularity of his prior felony convictions. (*See Harris*, 61 NY2d at 16.)

### B. Analysis

In this case, defendant's application presents several issues, each of which this court will address in turn.

## 1. May Defendant Lawfully Challenge the 1999 *Catu* Violation in the Current Predicate Hearing?

The threshold question before the court is whether defendant may raise his *Catu* challenge in the current predicate adjudication proceeding.[3]

The Appellate Division, First Department has recognized that a defendant has an independent right to challenge a prior conviction on *Catu* grounds, even if there has been no appeal of that conviction. (*People v Santiago*, 91 AD3d 438, 439 [1st Dept 2012].) Accordingly, defendant may raise such a challenge at the predicate adjudication proceedings in this case. (*See also* CPL 400.15 [7] [b] [a defendant may raise a federal constitutional challenge to a predicate violent felony conviction "at any time during the course of the (predicate adjudication) hearing"].)

## 2. Was There a *Catu* Violation in Defendant's 1999 Plea Allocution?

The next question to be answered is whether a *Catu* error occurred at defendant's 1999 plea allocution. Upon review of the transcript of that allocution (tr of proceedings, 1999 plea cases, Nov. 18, 1999), this court finds that the plea court made no reference to PRS at any time in the course of the proceedings. Accordingly, the court finds that, to the extent that the *Catu* rule is applicable to the plea proceedings resulting in the 1999 convictions, it was violated by the plea court.

The People's contention (citing *People v Catu*, 2 AD3d 306 [1st Dept 2003]) that defendant has not raised a viable *Catu* claim because he has failed to show prejudice, i.e., that "knowledge of the postrelease supervision component of [his] sentence would . . . have affected defendant's decision to plead guilty" (*id.* at 306), is erroneous. In its decision in *Catu*, the Court of Appeals reversed the ruling of the First Department and expressly disavowed any such requirement. (4 NY3d at 245.)[4] The Court of Appeals adhered to that view in *People v Louree* (8 NY3d 541 [2007]), in stating that "a defendant does not have to show that he would have declined to plead guilty if he had been correctly informed by the court," citing its prior ruling in *Catu*. (*Id.* at 545.)

---

3. The People originally raised this issue, but later abandoned it, apparently conceding the point.

4. "The refusal of the . . . Appellate Division to vacate defendant's plea on the ground that he did not establish that he would have declined to plead guilty had he known of the postrelease supervision was . . . error . . . ." (*Id.* [citation omitted].)

The federal habeas corpus cases cited by the People in support of their argument are not binding precedent for the present purposes. (*See People v Pignataro*, 22 NY3d 381, 386 n 3 [2013].) Furthermore, the People's reliance on *Hill v Lockhart* (474 US 52 [1985]) to require a showing of prejudice is misplaced. That case involved a Sixth Amendment claim of ineffective assistance of counsel, not a Fifth Amendment due process error on the part of a plea court. In any case, the decision of the Court of Appeals in *Catu* is dispositive for this court.

3. Is a *Catu* Error a Federal Constitutional Violation?

The third issue presented is whether a *Catu* error amounts to a federal constitutional violation, triggering defendant's rights under the statute.

Criminal Procedure Law § 400.15 (7) (b) provides, in pertinent part, that in the context of a second violent felony offender adjudication, a defendant may challenge the use of a previous conviction as a predicate felony conviction on the ground that it was "obtained in violation of the rights of the defendant under the applicable provisions of the constitution of the United States." As the statute provides for challenges of predicate felony convictions on federal, but not state, constitutional grounds (*see People v Nevarez*, 62 AD3d 585 [1st Dept 2009], *lv denied* 12 NY3d 927 [2009]), defendant's challenge to the use of his convictions in the 1999 plea cases is not viable unless *Catu* embodies federal constitutional principles.

■ Citing *People v Nevarez* and *People v Alvarado* (67 AD3d 430, 431 [1st Dept 2009], *lv denied* 13 NY3d 936 [2010]), the People contend that *Catu* rests solely on state constitutional grounds, rendering the decision inapplicable as a defense in sentencing enhancement proceedings under CPL 400.15 (7) (b).[5] Close examination of the ruling of the Court of Appeals in *Catu* and its underpinnings, however, demonstrates that the decision is premised on federal, as well as state, constitutional grounds.

In holding that the failure of a plea court to advise a defendant of the PRS component of a sentence violates due process requirements by rendering the plea not knowingly, intelligently

---

**5.** As the prosecution concedes, however, in neither *Nevarez* nor *Alvarado* did the Appellate Division, First Department expressly hold the *Catu* error sounds solely in state constitutional law. In *Nevarez*, a drug case not involving postrelease supervision or any claim under *Catu*, the Court merely confirmed the statutory language that a conviction which solely violates the State Constitution is not a bar to predicate offender enhanced sentencing. (62 AD3d at 585.)

and voluntarily entered (*People v Catu*, 4 NY3d at 244-245), the Court of Appeals in *Catu* relied upon its earlier decision in *People v Ford* (86 NY2d 397 [1995]), stating, " 'A trial court has the constitutional duty to ensure that a defendant, before pleading guilty, has a full understanding of what the plea connotes and its consequences.' " (*People v Catu*, 4 NY3d at 244-245, quoting *People v Ford*, 86 NY2d at 402-403.) *Ford,* in turn, cited for that proposition *Boykin v Alabama* (395 US 238 [1969]), a federal constitutional due process case, as well as *People v Harris* (61 NY2d 9 [1983]). The portions of *Harris* cited in *Ford,* similarly, relied entirely upon three federal constitutional due process cases, namely, *Boykin, Brady v United States* (397 US 742 [1970]), and *North Carolina v Alford* (400 US 25 [1970]). *Harris* explained that the trial judge's responsibility to ensure the accused's understanding of a plea and its consequences is the "clear import of *Boykin* and its progeny." (61 NY2d at 19.)

Further, *Catu* cited *Ford* in observing that "the court must advise a defendant of the direct consequences of the plea." (*People v Catu*, 4 NY3d at 244, citing *People v Ford*, 86 NY2d 397.) *Catu* defined a "direct" consequence as "one which has a definite, immediate and largely automatic effect on defendant's punishment" (*People v Catu*, 4 NY3d at 244), again quoting *Ford* (86 NY2d at 403), which, in turn, quoted *Cuthrell v Director, Patuxent Inst.* (475 F2d 1364 [4th Cir 1973], *cert denied* 414 US 1005 [1973]), another federal due process case, for that principle. Thus, *Catu*'s antecedents demonstrate, at the very least, that the *Catu* decision is rooted in both federal and state constitutional principles.

The recent decision of the Court of Appeals in *People v Pignataro* (22 NY3d 381 [2013]), implicitly acknowledged that a *Catu* error is a federal constitutional violation. The Court there, in declining to follow the view expressed by the United States Court of Appeals for the Second Circuit which had denied habeas corpus relief based upon a *Catu* claim on the ground that PRS is not a direct consequence of a guilty plea, explained that it was not bound by the interpretation of the Federal Constitution set forth by lower federal courts, "[which] directly contradicts this Court's *Catu* line of cases." (*Id.* at 386 n 3.) The Court of Appeals therefore "decline[d] the invitation to

overrule our precedent." (*Id.*)[6] Certainly, the Court of Appeals would have had no need to explain its reason for declining to follow the lower federal courts' interpretations of the Federal Constitution if *Catu* were grounded exclusively on state constitutional law.

Further support for viewing a *Catu* error as a federal constitutional violation may be found in the recent case of *People v Fagan* (116 AD3d 451 [1st Dept 2014]). While the Appellate Division, First Department was there presented with a claim of ineffective assistance of counsel, the *Fagan* court nonetheless remanded the case to the nisi prius court for a new predicate felony adjudication and resentencing proceeding upon finding that defense counsel had ineffectively failed to investigate and raise a *Catu* claim as to the defendant's prior violent felony conviction at the original predicate felony hearing. In language most telling for purposes of the People's argument in the instant case, the Appellate Division explained its reason for having ordered a new predicate felony adjudication and sentencing proceeding:

> "[D]efense counsel rendered ineffective assistance at the July 6, 2010 sentencing proceeding when he failed to challenge the constitutionality of defendant's 2000 New York County conviction, which was used as a predicate conviction in adjudicating defendant a persistent violent felony offender (*see* CPL 400.15 [7] [b]; 400.16 [2]). It is undisputed that at his 2000 plea proceeding, defendant was not advised that his sentence would include postrelease supervision (*see People v Catu*, 4 NY3d 242 [2005]). . . .
>
> "Thus, this was not a case where an attorney may have reasonably believed that it would have been futile to raise a *Catu* issue regarding the constitutionality, for predicate felony purposes, of defendant's 2000 conviction, or that the law was unclear on this issue . . . .
>
> "Accordingly, defendant is entitled to have his persistent felony offender status litigated with proper

---

**6.** The *Pignataro* Court was referring to the Second Circuit's decision in *Pignataro v Poole* (381 Fed Appx 46 [2d Cir 2010]), in which the Second Circuit reached this conclusion based upon its earlier holdings in *Earley v Murray* (451 F3d 71, 75-76 [2d Cir 2006]) and *Earley v Murray* (462 F3d 147, 149 [2d Cir 2006]).

assistance of counsel, at a new adjudication and sentencing." (*People v Fagan*, 116 AD3d at 451, 452 [citations omitted].)

In *Fagan*, had the unadvanced *Catu* error not sounded in federal constitutional law, the Appellate Division most certainly would not have found ineffectiveness, but rather futility in counsel's not having raised the issue (*see People v Caban*, 5 NY3d 143, 152 [2005]), and would have had no reason for ordering a new predicate felony adjudication.

Upon the Appellate Division's remand, the plea justice, who had adjudicated the defendant a mandatory persistent violent felony offender (Penal Law § 70.08) and had sentenced him to 18 years to life imprisonment at his original sentencing, found defendant to be a second violent felony offender (Penal Law § 70.04) and resentenced him to 15 years' imprisonment to be followed by five years' PRS. This result, apparent from the court records (*People v Fagan*, Sup Ct, Bronx County, indictment No. 944/09), establishes that one of the defendant's three predicate convictions was no longer used in the adjudication of his predicate status. Given the arguments advanced in the Appellate Division, the third violent felony conviction was likely jettisoned under CPL 400.15 (7) (b) on *Catu* grounds.

Similarly, in *People v Santiago*, court records (*People v Santiago*, Sup Ct, NY County, indictment No. 3998/06) reveal that on remand, defendant, who had originally been adjudicated a second violent felony offender, was adjudicated a first violent felony offender after the First Department granted CPL 440.20 relief to allow defendant to raise his *Catu* claim. There, as well, court records suggest that a predicate felony conviction was discarded, likely on *Catu* grounds.[7]

Thus, the underpinnings of *Catu* itself, as well as the recent appellate decisions in *Pignataro*, *Fagan* and *Santiago*, demonstrate that a *Catu* error is a federal constitutional violation, even if also contravening our State Constitution.

The cases cited by the People in support of their argument to the contrary do not help them. Although the Appellate Division, First Department stated in *People v Alvarado* that "defendant's prior [*Catu*-violative] conviction was not 'obtained in

---

7. Thus, in both *Fagan* and *Santiago*, remand was not a mere formality, as it was in *People v Beaty* (22 NY3d 490 [2014]), as urged by the People. In any event, the histories of *Fagan* and *Santiago* differ entirely from that of *Beaty*. In *Beaty*, the remand was from the Court of Appeals to the Appellate Division on the basis of the latter Court's misapplication of a standard applicable solely in appellate courts. (*See* 22 NY3d at 493.)

violation of the rights of the defendant under the applicable provisions of the constitution of the United States' " (22 NY3d at 431, quoting CPL 400.15 [7] [b]), the holding of the *Alvarado* court was based upon the defendant's waiver of his *Catu* challenge pursuant to CPL 400.15 (7) (b). (*See* 67 AD3d at 430-431.) The quoted statement in *Alvarado* was, at most, dictum. (*See People v Graham*, Sup Ct, NY County, Aug. 9, 2013, Kahn, J., indictment No. 03379/2010, slip op at 25-26.) Further, *Alvarado* appears to have been overruled by the Court of Appeals' decision in *Pignataro*, for the reasons already stated. Additionally, in its recent decision in *Fagan*, the First Department apparently abandoned the view it expressed in dictum in *Alvarado* by permitting a *Catu* claim to go forward and remanding the matter to have the defendant's persistent felony offender status litigated at a new predicate adjudication and sentencing proceeding. (116 AD3d at 452.) Both the Court of Appeals and the First Department now appear to recognize a *Catu* error as raising federal constitutional issues.

The People's persistence in relying on the federal habeas corpus cases to aid them is, as before, unavailing. Those rulings involve the application by federal courts of gatekeeping standards for federal collateral review of state court judgments pursuant to the federal Antiterrorism and Effective Death Penalty Act (AEDPA) (28 USC § 2254 [d] [1]). That statute requires, as a precondition to federal habeas corpus relief from the state court conviction, a showing that the state court ruling "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." (28 USC § 2254 [d] [1]; *see Williams v Taylor*, 529 US 362, 382 [2000] [rule that is not derived from clearly established law as determined by the United States Supreme Court is "not available as a basis for relief in a habeas case to which AEDPA applies"].) As the court observed in one of the cases cited by the People, *Potter v Green* (2009 WL 2242342, 2009 US Dist LEXIS 64230 [ED NY, July 24, 2009, No. 04-CV-1343 (JS), Seybert, J.]), the United States Supreme Court has never held that a *Catu* violation is a violation of federal constitutional law, and thus it is not a "clearly established" Supreme Court precedent as required by *Williams* for a viable AEDPA habeas corpus claim. The cases on which the People rely thus stand merely for the proposition that a *Catu* violation cannot, at this time, be redressed via federal habeas corpus review.

4. Is Defendant's *Catu* Challenge Barred by *People v Catalanotte*?

In *People v Catalanotte* (72 NY2d 641 [1988]), the Court of Appeals established a two-pronged standard for determining the viability of a challenge, in a predicate sentencing proceeding, of a defendant's prior felony conviction as retrospectively violative of a federal constitutional rule. To qualify as applicable for such use, the Court of Appeals there announced, the federal constitutional rule must either be "the law existing at the time the conviction was obtained," or, alternatively, it must be "subsequent law applicable to the judgment under principles of retroactivity." (*Id.* at 645.) The People here contend that defendant's *Catu* challenge is barred as *Catu* was neither the existing law at the time defendant's conviction was obtained nor retroactively applicable to defendant's prior felony conviction.

At the outset, the People's reliance upon *Catalanotte* is premised upon a mischaracterization of *Catu* analysis of a prior felony conviction in the context of an initial predicate adjudication proceeding as a "retroactive" application of *Catu*. Because application of *Catu* to a prior felony conviction in a post-*Catu* initial predicate status adjudication proceeding such as this one neither affects the finality of the prior conviction in question nor negates any previously entered judicial determination, *Catu* analysis of a prior conviction is, in this sense, not "retroactive" at all. Rather, application of *Catu* in the context of a post-*Catu* initial predicate adjudication proceeding challenge is simply a means to determine whether a prior felony conviction may properly be used for purposes of enhancement of a sentence imposed in a post-*Catu* conviction.

Even assuming that *Catalanotte* is properly applicable in this case, close examination of the *Catalanotte* rules demonstrates that neither prong of *Catalanotte* precludes defendant from raising his *Catu* claim here, however.

a. Existing Law at Time of Plea

■ At the time of defendant's 1999 plea cases, the first sentence of Penal Law § 70.45, the statute enacted in 1998 pursuant to which PRS was established, provided: "Each determinate sentence also includes, *as a part thereof,* an additional period of post-release supervision." (Former Penal Law § 70.45 [1], as added by L 1998, ch 1, § 15 [eff Aug. 6, 1998]

[emphasis added].)[8] Thus, at the time of defendant's 1999 pleas, PRS was required to be imposed "as a part" of defendant's sentence, as it had been since the enactment of former Penal Law § 70.45 in 1998. (*Id.*)

Further, at the time of defendant's 1999 pleas, *People v Ford*, which had been decided in 1995, required advisement by the court of "direct" consequences of a plea, i.e., those consequences which have a "definite, immediate and largely automatic effect on defendant's punishment." (86 NY2d at 403.) As PRS was in 1998 "a part [of defendant's sentence]," and therefore a direct consequence of his plea, the court was required in 1999 to advise defendant Province of the PRS portion of his sentence in order to afford him due process.

In sum, the legal requirement to include PRS "as a part" of a determinate sentence dates back to 1998, and the New York Court of Appeals had determined that federal due process principles required pronouncement of direct consequences of a plea at the time it is entered since the issuance of the *Ford* decision in 1995. Therefore, the law did not change when *Catu* was decided in 2005, and defendant's due process right to notice of the PRS portion of his sentences "exist[ed] at the time [his] conviction[s] [were] obtained" (*People v Catalanotte* at 645) in 1999. Thus, if retroactivity analysis under *Catalanotte* were required, *Catu* would apply to defendant Province's 1999 convictions under the decision's first prong.

b. Retroactivity Rules

█ Alternatively, even if *Catu* were viewed as a "new" rule first announced by the Court of Appeals in 2005, principles of retroactive application under any of the three potentially applicable retroactivity rubrics would require that defendant receive the benefit of the rule in this proceeding.

i. *Catalanotte*'s Retroactivity Rule

First, to the extent that *Catalanotte* may be interpreted as setting forth its own retroactivity rule for predicate sentencing, that rule is that "a defendant is entitled to the benefit of any

---

8. In 2008, section 70.45 was amended in light of the Court of Appeals' decision in *People v Sparber* (10 NY3d 457 [2008]) to make clear that a sentencing court is required to pronounce the term of the PRS period at the time of sentence. (L 2008, ch 141, § 3 [eff June 30, 2008].) The 2008 amendment thus revised the quoted sentence to read as follows: "When a court imposes a determinate sentence it shall in each case state not only the term of imprisonment, but also an additional period of post-release supervision as determined pursuant to this article." (Penal Law § 70.45 [1].)

change in the law if the change occurs before his conviction becomes final" but is not entitled to any such change *after* the conviction becomes final, unless the law has "engrafted an exception to the traditional rule to permit collateral attack on judgments of conviction after they have become final." (72 NY2d at 645.)

While there are no appellate court holdings squarely addressing the issue of the retroactive applicability of *Catu* in predicate adjudication proceedings, recent appellate decisions appear to establish that *Catu* is to be applied to pre-*Catu* convictions in initial predicate sentencing proceedings.

As discussed above, in *People v Fagan*, the Appellate Division, First Department vacated a sentence originally imposed in 2010 and remanded the case to the nisi prius court to allow a resentencing proceeding to go forward at which defense counsel could challenge the use for predicate sentencing purposes of a prior, pre-*Catu*, conviction on *Catu* grounds. Specifically, in *Fagan*, the defendant had been sentenced in 2010 as a persistent violent felony offender based upon, inter alia, a 2000 predicate felony conviction in which a period of PRS was added in 2009 to cure an unlawful administrative imposition of PRS (*see People v Sparber*, 10 NY3d 457 [2008]). Later, the period of PRS was removed from the sentence pursuant to Penal Law § 70.85 and in accordance with *People v Williams* (14 NY3d 198 [2010]). On its combined review of the defendant's direct appeal of the 2010 judgment and the appeal of the denial in 2013 of his CPL 440.20 motion, the First Department held that the matter should be remanded to the nisi prius court to enable that court to consider whether *Catu*, decided in 2005, rendered defendant's conviction by guilty plea in 2000 violative of the Federal Constitution for CPL 400.16 predicate sentencing purposes. (*People v Fagan*, 116 AD3d at 451, 452.) And, as discussed above, on resentencing, the defendant's sentence was reduced from a persistent violent felony offender sentence of an indeterminate term of imprisonment of 18 years to life to a second violent felony offender determinate term of 15 years' imprisonment followed by five years of PRS. If, as appears to be the case, the defendant in *Fagan* received such sentence because he prevailed on his *Catu* claim, *Catu* was applied to the defendant's 2000, pre-*Catu* conviction at the defendant's new predicate adjudication proceeding for his 2010, post-*Catu* conviction.

Similarly, as earlier noted, in *People v Santiago*, a case arising in 2006, subsequent to *Catu*, the First Department

remanded the case to allow a *Catu* challenge to a 2004, pre-*Catu*, predicate felony conviction, and on remand, defendant, having been adjudicated a second violent felony offender originally, was adjudicated a first violent felony offender, again, in all likelihood due to the *Catu* error which prompted the remand.

Additionally, in *People v Pignataro*, decided in 2013, the defendant was convicted upon his plea of guilty without advisement of PRS by the Court in 2000 and sentenced in 2001. He was then resentenced in 2010 to a determinate term without PRS pursuant to Penal Law § 70.85. Defendant appealed the resentencing order, arguing that his Penal Law § 70.85 resentencing unconstitutionally deprived him of his right to seek vacatur of his *Catu*-violative plea. The Court of Appeals found that the 2000 guilty plea was defective in light of *Catu*, decided in 2005, but further found that the 2010 resentencing under Penal Law § 70.85, which was effective as of June 30, 2008, cured the *Catu* violation in that case.[9]

Therefore, the recent appellate cases of *Fagan*, *Santiago* and *Pignataro*, all of which are controlling precedent for this court, demonstrate that, with respect to *Catu* challenges of prior convictions in the context of predicate status adjudications, the law has "engrafted an exception to the traditional rule to permit collateral attack on judgments of conviction after they have become final" (*People v Catalanotte*, 72 NY2d at 645).[10] This particular exception, moreover, does not involve the vacation of the earlier flawed judgment itself.[11]

---

**9.** In *Fagan*, by contrast, because the defendant had already served four years of the PRS portion of his sentence, and had spent time in jail for violating his PRS, vacatur of the PRS term of the defendant's sentence would not cure the *Catu* defect, as it had in *Pignataro* and other Penal Law § 70.85 resentencings, where the defendant has served no PRS term. (*See* 116 AD3d at 451.)

**10.** There is no doubt that the ostensible predicate felony judgments of conviction in *Fagan*, *Santiago* and *Pignataro*, entered years earlier, had become "final."

**11.** The early case of *People v Menjivar* (9 Misc 3d 1108[A], 2005 NY Slip Op 51451[U] [Sup Ct, Queens County, Sept. 14, 2005]), which research indicates is the sole decision to discuss, albeit in dictum, the retroactivity of *Catu*, is inapposite. That case involved a motion seeking to vacate a judgment entered prior to the issuance of the *Catu* decision based upon a retroactive application of *Catu*. The *Menjivar* court denied defendant's *Catu* claim as procedurally barred as the defendant had failed to raise it on direct appeal. (2005 NY Slip Op 51451[U], *2, citing CPL 440.10 [2] [c].) Applying the *Pepper* test, the *Menjivar* court, in dictum, then concluded that *Catu* may not

The reliance placed by the People on the decision of the Appellate Division, First Department in *People v Odom* (63 AD3d 408 [1st Dept 2009], *lv denied* 13 NY3d 798 [2009] [*Odom II*]), for the proposition that *Catu* may not be applied retroactively in recidivist sentencing proceedings is misplaced. First, the statement in *Odom II* upon which the People rely[12] explained the court's holding, which was that the defendant had waived his *Catu* claim under CPL 400.15 (7) (b) by having failed to raise it "at the appropriate time" (*id.* at 409), that being on the first occasion on which it was used against him for predicate sentencing purposes, to wit, at a predicate adjudication hearing held in 2006, as the Appellate Division, Second Department had previously held in *Odom I*. For that reason, the First Department held, the defendant was procedurally barred from raising his *Catu* claim as to the 2000 conviction on the direct appeal of the 2007 conviction then before that court, where the 2000 conviction had again been used for predicate sentencing purposes. Indeed, the *Odom II* court's statement on *Catu* retroactivity in recidivist sentencing proceedings simply rejected, as had the Second Department in *Odom I*, any retrospective review of the previously concluded 2006 predicate adjudication proceeding which the defendant had sought on *Catu* grounds. The First Department's reference to "retroactively apply[ing] *Catu* to recidivist sentencing proceedings" expressed that Court's determination that previously concluded predicate adjudications should not be revisited on *Catu* grounds, because doing so "would effectively eviscerate the

be retroactively applied to vacate a pre-*Catu* guilty plea. Here, by contrast, the *Catu* rule is sought to be applied in a post-*Catu* predicate sentencing proceeding. In any case, *Menjivar* has been overruled by the recent appellate decisions in *Pignataro*, *Fagan* and *Santiago*.

12. The First Department stated:
"It should be noted that defendant raised this identical claim in the Second Department on the direct appeal from his 2006 conviction entered by plea as aforesaid. That [c]ourt rejected his argument and affirmed his conviction, holding that '[h]aving failed to challenge the constitutionality of the 2000 conviction at the predicate felony proceeding held at the time he pleaded guilty in the matters before us, the defendant waived his current claim[.]' ([*People v Odom*,] 61 AD3d 896, 897 [(2d Dept) 2009][, *lv denied* 13 NY3d 747 (2009) (*Odom I*)]). The Second Department thus *declined defendant's invitation to retroactively apply Catu to recidivist sentencing proceedings, as do we.* To hold otherwise would effectively eviscerate the binding effect of predicate violent felony offender proceedings on a defendant as mandated by CPL 400.15 (8)." (*Odom II*, 63 AD3d at 409 [emphasis added].)

binding effect of predicate violent felony offender proceedings on a defendant as mandated by CPL 400.15 (8)." (*Odom II*, 63 AD3d at 409.) The *Odom II* court did not hold that *Catu* could never be applied in the first instance in original predicate sentencing proceedings to prevent the initial use of pre-*Catu* convictions as sentence enhancements where no previous predicate adjudication had been made.

The *Odom II* case is factually distinguishable from this case, as defendant Province has never previously had the opportunity to contest the use of the 1999 convictions as predicate sentencing enhancements. Section 400.15 (7) (b) and (8), which were dispositive of the issues in *Odom II*, where the defendant had previously waived any constitutional challenge to those convictions, have no application to Province's initial second violent felony offender proceeding.

Moreover, as already explained, subsequent rulings of both the Appellate Division, First Department in *Fagan* and *Santiago*, and of the Court of Appeals in *Pignataro* demonstrate that current law is contrary to any limitation on applying *Catu* to bar the use of pre-*Catu* violent felony convictions in predicate sentencing proceedings.

Therefore, to the extent that *Catalanotte* sets forth its own test on retrospective application of federal constitutional challenges to potential predicate convictions, application of that test demonstrates that *Catu* may be retrospectively applied in challenging prior felony convictions in predicate adjudications.

### ii. *Eastman/Teague* Analysis

Under the general retroactivity rubric of *Teague v Lane* (489 US 288 [1989]), adopted by the Court of Appeals in *People v Eastman* (85 NY2d 265, 275 [1995]) and reaffirmed in *People v Baret* (23 NY3d 777 [2014]), a "new" federal rule of constitutional criminal procedure will not be retroactively applicable outside of direct appeal.[13] The threshold issue in the application of *Eastman/Teague* analysis is whether the decision has announced a "new" rule. (*See Teague v Lane*, 489 US at 310.)

Under an exception to the general rule of *Eastman / Teague*, however, where the application is merely one of an existing (or "old") federal constitutional rule being applied to a new situa-

---

**13.** *See generally* Marcy L. Kahn & Christopher H. Benbow, *Revisiting Constitutional Retroactivity in New York After Danforth: Should Padilla and Other Supreme Court Guilty Plea Counsel Cases Prompt a Change from Eastman-Teague, or Adherence to Chaidez?*, 99 Cornell L Rev Online 87 (Dec. 2013).

tion, the rule will always be retroactive. (*People v Eastman*, 85 NY2d at 275; *see Chaidez v United States*, 568 US —, —, 133 S Ct 1103, 1114 [2013, Sotomayor, J., dissenting].) Here, that exception comes into play.

Specifically, the old rule, as stated in *Ford*, is that principles of federal (and state) due process require courts to advise defendants as to the "direct" consequences of a plea, i.e., consequences "which ha[ve] a definite, immediate and largely automatic effect on defendant's punishment." (86 NY2d at 403.) *Catu*, citing *Ford*, held that because PRS is one such "direct" consequence of a plea, the Court has a constitutional duty to advise a defendant of PRS as a part of the sentence. (4 NY3d at 244-245.) Thus, *Catu* applies the "old" rule of *Ford* in a new setting, namely, court advisement of PRS. *Catu* would, therefore, be retroactively applicable, assuming the *Eastman/Teague* rubric were to govern the analysis. (*Cf. Chaidez v United States*, 568 US at —, 133 S Ct at 1105 [*Padilla v Kentucky* (559 US 356 [2010]) announced a "new" rule and therefore "does not have retroactive effect"]; *People v Baret*, 23 NY3d at 799 [same].)

### iii. *Pepper/Linkletter* Analysis

In *People v Pepper* (53 NY2d 213, 220 [1981]), the Court of Appeals adopted the rule articulated by the United States Supreme Court in *Linkletter v Walker* (381 US 618, 636 [1965]), as its rule to be applied to determine the retroactivity of newly announced rules of New York law, including not only those emanating from New York's constitution, but also from its statutory and common law. Under the *Pepper* rubric, should the court determine, as a threshold matter, that the rule in question is a "new" rule, the court must examine three factors: the purpose of the new rule; the reliance of law enforcement agencies on the old rule; and the effect of the new rule on the administration of justice. (*People v Pepper*, 53 NY2d at 220.)

The Court of Appeals has stated that for a new rule to be applied retroactively, its purpose must relate to the fact-finding process as to the determination of guilt or innocence. (*People v Favor*, 82 NY2d 254, 265 [1993].) Here, the purpose of the new rule is to ensure that the defendant "[is] aware of the post-release supervision component of [a] sentence in order to knowingly, voluntarily and intelligently choose among alternative courses of action" when contemplating a guilty plea. (*People v Catu*, 4 NY3d at 245.) As *Catu*'s purpose is to ensure that a defendant knowingly, intelligently and voluntarily enters a

negotiated plea, and the plea allocution process involves the defendant's making of a factual and legal admission of guilt of a crime on the record, a *Catu* error does impact both the fact-finding process and the determination of defendant's guilt or innocence. Therefore, the first factor of *Pepper/Linkletter* would weigh in favor of retroactivity. (*Cf. People v Lovejoy*, 44 Misc 3d 457 [Sup Ct, Bronx County 2014] [in applying *Pepper* analysis to *People v Peque* (22 NY3d 168 [2013]), due process requirement of court advice of deportation consequences of plea does not impact fact-finding or liability determination, so rule is not retroactive].)

With respect to the second *Pepper/Linkletter* factor, the reliance of law enforcement authorities on the "old" rule, as previously explained, prosecutors and judges in this state have, since 1995, been on notice that courts have a due process duty to advise defendants of the direct consequences of a plea, and have known since the enactment of Penal Law § 70.45 in 1998 that, with respect to a determinate sentence, PRS is "a part thereof" (former Penal Law § 70.45 [1]) which has a "definite, immediate and largely automatic effect on defendant's punishment" of which defendant must be advised. (*People v Ford*, 86 NY2d at 403.) Therefore, *Catu* would not unduly impact reliance placed by prosecutors and courts on a different rule antedating *Catu*, at least not since the enactment of PRS in 1998. Additionally, as *Catu* applies solely to judicial proceedings, police and other non-prosecutorial law enforcement agencies are not affected by its retroactive application.

With regard to the effect on the administration of justice of any retrospective application of the new rule, judges have been aware of the inclusion of terms of PRS in sentences since Penal Law § 70.45 was enacted in 1998. Any concern that application of *Catu* in predicate status adjudications might open the floodgates to a plethora of *Catu*-grounded challenges to old, pre-*Catu* guilty pleas is misplaced. Notably, allowing a *Catu* analysis of a conviction when it is initially proffered at a predicate violent felony hearing would not affect the finality of the conviction so challenged, nor overturn any previously entered judicial determination. Again, in that sense, the defendant's desired use of *Catu* is not "retroactive" at all: rather, it is a defense advanced in a post-*Catu*, initial predicate sentencing proceeding. (*Cf. People v Menjivar*, 2005 NY Slip Op 51451[U], *3 [CPL 440.10 motion sought to vacate conviction by retroactive application of *Catu*].) Additionally, although *Catu* errors

were widespread in the late 1990s and early 2000s, the bulk of these errors have already been corrected in resentencing proceedings pursuant to *People v Sparber* and Penal Law § 70.85 (*see Pignataro*, 22 NY3d 381 [2013]), as well as in decisions on CPL 440.20 motions and in plea vacations and remittals from appellate courts, so the number of similar challenges which could be successfully mounted is considerably diminished.

Further, the availability of such challenges in the context of predicate felony adjudications would be statutorily limited, as failure to raise them in the course of an initial predicate violent felony proceeding, absent good cause, would constitute a waiver of any future challenge on such ground at future adjudication hearings (*see* CPL 400.15 [7] [b] [second violent felony offender]; 400.20 [6] [discretionary persistent felony offender]; 400.21 [7] [b] [second felony offender or second felony drug offender]), as occurred in *Odom I* and *Odom II*. Accordingly, it is unlikely that application of *Catu* in initial predicate sentencing proceedings would have an undue detrimental effect on the administration of justice.

Therefore, neither the *Catalanotte* rule nor the principles of retroactivity under either *Eastman/Teague* or *Pepper/Linkletter*, assuming their applicability, bar defendant from challenging his 1999 convictions on *Catu* grounds.

### III. Conclusion

For all these reasons, defendant's convictions by plea of guilty in Kings County indictment Nos. 3581/99 and 4710/99 are violative of defendant's federal constitutional rights described in *People v Catu*, and therefore are barred under CPL 400.15 (7) (b) from serving as predicate felony convictions for purposes of enhancement of defendant's sentence in this case. Accordingly, defendant Jerry Province has been adjudicated a first violent felony offender (Penal Law § 70.02), and will serve his sentence as such in accordance with the order of this court dated December 5, 2014.